

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00154-CR

JUSTIN M. WILLIAMS                                                     APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

----------

### FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Justin M. Williams appeals his jury-assessed sentence of sixty years' confinement stemming from his conviction for aggravated robbery while using a deadly weapon.[2] In one point, Williams contends that the trial court erred

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 29.03(a)(2) (West 2011).

by denying his motion to suppress a video recording of an interrogation in which he detailed his involvement in three aggravated robberies conducted over a ten-day period, culminating in the aggravated robbery which led to the conviction that is the basis of the sentence he now appeals. The video was played for the jury during the punishment phase at trial. We will affirm.

## II. BACKGROUND

Williams and an accomplice named Devaughn Bryant became the focus of Fort Worth Police Detective Sandra Castillo's investigation into reports of two men involved in a spree of "five or six" armed robberies during May 2010. Castillo wrote "at least four" arrest warrants for Williams. Closely following his arrest under these warrants on May 26, 2010, Castillo interrogated Williams specifically about an additional armed robbery of a Whataburger in Fort Worth that occurred on May 20, 2010. A video camera captured this interview.

At the first in a series of three suppression hearings, Castillo testified that Williams was "[v]ery cooperative" during her interview. According to Castillo, she and Williams "had a good rapport with each other." Castillo averred that after she and Williams read the Fort Worth Police Department's standard *Miranda* "form" aloud together, Williams waived his rights and agreed to her interview. From there, Castillo interrogated Williams for nearly an hour regarding his involvement in the Whataburger robbery, as well as "several [other] offenses," before Williams requested a bathroom break. Castillo obliged. Castillo said that at no time did Williams request an attorney or otherwise ask to terminate the

2

interrogation. After the bathroom break, Fort Worth Detective Danny Payne joined Castillo in interrogating Williams.

Castillo recalled that when Payne entered the room, Williams "kind of clammed up a little bit . . . I could tell he just wasn't comfortable at first." Castillo said, however, that "after talking a few minutes [with Payne], he seemed to be okay talking again." Castillo said that at no time during this portion of the interview did Williams indicate that he wished to terminate the interview. According to Castillo, if Williams had indicated at all that he wished to terminate the interview, "I would have stopped." In the second portion of the interview, Williams confessed more details pertaining to multiple armed robberies.

At the initial pretrial hearing, the State introduced a video of the complete interview, which included Castillo's individual interview of Williams, a twelve-minute break, and then Castillo and Payne's dual interview of Williams. In a later-held suppression hearing, the trial court allowed Williams to offer a forensically audio-enhanced version of the interview in evidence. Ultimately, the trial court found that Williams never asked to terminate the interview. The trial court further found that the twelve-minute break did not result in two separate interviews; rather, the trial court found that the police conducted one, continual interrogation. The trial court overruled William's motion to suppress the video, and it was played for the jury at the punishment phase of trial. The jury assessed punishment at sixty years' confinement. This appeal followed.

3

### III. DISCUSSION

In his sole point, Williams argues that the trial court erred by denying his motion to suppress the portion of his interview in which Payne participated. Given the statutes and caselaw cited in his brief, Williams's overall argument seems to be that any statements he made in Payne's presence should have been suppressed because he invoked his right to silence when Castillo returned with Payne after a twelve-minute break from when Castillo interviewed Williams individually. Even though Williams claims that he "presents a sole point of error," he argues the "collateral issue" that Castillo and Payne "deliberately attempted to circumvent his *Miranda* warnings." He further argues that subsumed in his sole point is the complaint that "Payne's version of the warnings" to Williams when Payne joined the interrogation "actually missed one of the basic five components of the warning."

Because Williams cited Texas Code of Criminal Procedure Article 38.22 in his objection to the trial court and because he begins his discussion in his brief by citing the same, we will analyze his complaints under the standards dictated in Article 38.22, rather than relying solely on federal law concerning the invocation and waiver of these related rights. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West Supp. 2013); *see also Mayfield v. State*, 828 S.W.2d 568, 571 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) ("There are some differences between the warnings required under article 38.22 and the *Miranda* warnings."); *see also Knowles v. State*, No. 13-09-00170-CR, 2010 WL 3279396, at *6 (Tex.

4

App.—Corpus Christi Aug. 19, 2010, no pet.) (mem. op., not designated for publication) (holding an objection citing *Miranda* was sufficient to preserve error under Article 38.22 because the trial court considered the objection in the context of Article 38.22).

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility

and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

### B.    Payne's Warnings and Participation in the Interrogation

Williams concedes that there were no constitutional or statutory violations of his rights concerning Castillo's interviewing him individually, and he also concedes that he waived those rights. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2; *see also Miranda v. Arizona*, 384 U.S. 436, 490, 86 S. Ct. 1602, 1636

6

(1966). But part of Williams's complaint is that when Payne entered the interrogation with Castillo after the twelve-minute break, it was incumbent upon Payne to again properly advise Williams of his rights under Article 38.22 and that again Williams would have needed to waive those rights in order for the portion of the interrogation in which Payne participated to be introduced against him. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2. Williams also argues that Payne's reminder to him of Castillo's earlier proper warnings coupled with a summary of those rights was insufficient to advise him properly because Payne did not express that statements made by him could be used against him at trial. *See id.*

The trial court rejected Williams's argument that what occurred in this case were two distinct and separate interrogations. Instead, the trial court specifically found that Castillo's individual interview of Williams, the twelve-minute break, and the joint interview by Payne and Castillo that followed the break were all part of one "continual interrogation." Nonetheless, Williams invites us to treat this series of events as two distinct interrogations. Williams does not provide any authority supporting this position.

### 1. Castillo's Credibility

In an apparent attempt to challenge the trial court's finding that a single interrogation occurred, Williams spends several pages in his brief assailing Castillo's veracity concerning her testimony at the pretrial suppression hearings and at trial as to why Payne joined the interrogation after the break. Williams

claims that "Castillo's credibility in general is highly questionable," that her "real motivation" for taking a break in the interview and returning with Payne was to "intimidate" him into a confession, and that Castillo's testimony as to why she brought Payne into the interview "was arguably concocted for the benefit of the trial court." Williams even accuses Castillo of "retrofit[ting]" her testimony at the suppression hearing, because she realized "Payne's sudden unexplained appearance on the tape . . . could compromise the second half of" the interrogation. Williams also suggests that Castillo's testimony is questionable because Castillo was "perhaps attempt[ing] to attenuate the taint associated with Payne's failure to complete [a] second set of *Miranda* warnings about a different offense."

We conclude that Williams's antagonism toward Castillo's credibility is an attempt to ask this court to ignore that the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony during a suppression hearing. *See Wiede*, 214 S.W.3d at 24–25 ("An appellate court reviewing a trial judge's ruling on a motion to suppress 'must view the evidence in the light most favorable to the trial court's ruling.' Trial judges, unlike their appellate court counterparts, are uniquely situated to 'observe[ ] first hand the demeanor and appearance of a witness[.]'"). We overrule Williams's point to the extent that he invites us to hold that the trial court could not have found Castillo's testimony credible.

### 2. One Continual Interview

Whether a subsequent interview constitutes a continuation of an earlier interview, and thus a single interview, has been addressed on several occasions by the Texas Court of Criminal Appeals. *See Bible v. State*, 162 S.W.3d 234, 242 (Tex. Crim. App. 2005) ("Under these circumstances, we find that the two sessions were part of a single interview for the purpose of Article 38.22 and *Miranda*."); *Ex parte Bagley*, 509 S.W.2d 332, 337 (Tex. Crim. App. 1974) ("[T]he express written warning given petitioner some 6 to 8 hours previous to the complained of confession . . . satisfied the dictates of *Miranda*.").

We have examined the record against the caselaw, and we conclude that there is no evidence in the record contrary to the trial court's finding that the twelve-minute break after the first interview conducted by Castillo, followed by Payne joining Castillo for a joint interview of Williams, constituted a single continual interrogation. *See Stallings v. State*, No. 09-09-00200-CR, 2010 WL 2347244, at *2–3 (Tex. App.—Beaumont June 9, 2010, pet. ref'd) (mem. op., not designated for publication) ("Although Stallings was not reminded of these warnings when the joint interview began, only a matter of minutes passed between Stallings's individual and joint interviews."); *see also Hayes v. State*, No. 05-11-00260-CR, 2013 WL 1614108 (Tex. App.—Dallas Feb. 19, 2013, no pet.) (mem. op., not designated for publication) ("[L]ess than ninety minutes elapsed between the time appellant was initially read his rights and his confession. Although different officers conducted the two interviews, and the crimes they

9

inquired about were different, the duration of the break in questioning was less than thirty minutes, and Harrison verified that appellant had been read his rights before he began his interview. Moreover, the evidence indicates that appellant remained in custody and in the same interview room throughout the two sessions of questioning and the intervening break."). We hold that under these circumstances, neither Castillo nor Payne were required to give Williams additional admonishments before continuing with the joint portion of the interview. We overrule this portion of Williams's sole point.

## C. Williams Did Not Invoke His Right to Silence

In the remainder of his sole point, Williams argues that he had "clear[ly]" terminated the interrogation when Payne arrived by stating, "I really just don't know, and for . . . to say anything else," and that his "continued attempts to invoke his Fifth Amendment rights were literally and figuratively drowned out by the interrogating detectives." We disagree.

### 1. The Right to Terminate Questioning

The right to terminate questioning is among the procedural safeguards that *Miranda* and Article 38.22 establish to protect the Fifth Amendment right to remain silent. *See Williams v. State*, 257 S.W.3d 426, 432 (Tex. App.—Austin 2008, pet ref'd). This right requires police officers to immediately terminate questioning when a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (*quoting Miranda*, 384 U.S. at 473–74, 86 S. Ct.

10

at 1627).  The suspect is not required to use any particular phraseology to invoke the right to remain silent.  *Ramos*, 245 S.W.3d at 418.  Any declaration of a desire to terminate the questioning should suffice.  *Id.*  A law enforcement officer may not continue to question the suspect in an attempt to persuade the suspect to change his mind and talk.  *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).

But an interrogating officer is not required to terminate his questioning unless the suspect's invocation of his rights is unambiguous.  *Ramos*, 245 S.W.3d at 418 (*citing Dowthitt*, 931 S.W.2d at 257).  "If the suspect's statement is not an unambiguous or unequivocal request [to terminate the interview or to invoke the right to silence], the officers have no obligation to stop questioning him*." Davis v. United States*, 512 U.S. 452, 461–62, 114 S. Ct. 2350, 2356 (1994).  A police officer is permitted, but not required, to clarify a suspect's wishes when faced with an ambiguous invocation of the right to remain silent.  *Marshall v. State*, 210 S.W.3d 618, 628 (Tex. Crim. App. 2006) (*citing Davis*, 512 U.S. at 461–62, 114 S. Ct. at 2356).  In determining whether the right to remain silent was unambiguously invoked, courts look at the totality of the circumstances.  *Williams*, 257 S.W.3d at 433.  Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances.  *Id.* at 433–34.

11

### 2.  Williams's Alleged Attempt to Terminate the Interrogation

Williams argues that he was "as clear as he could be" that he wanted to terminate the interview with Payne when he stated, "I really just don't know, and for . . . to say anything else."  But the statement, "I really just don't know, and for . . . to say anything else," was not in itself a clear and unambiguous statement of Williams's refusal to talk to Payne.  When the phrases "I was like good to talk to her, but like since you came in here, you know" and "because you know" were added to qualify that statement, Williams further signaled indecision or ambivalence toward waiving his rights, but he did not unambiguously express a desire to remain silent in these statements.  *See Mayes v. State*, 8 S.W.3d 354, 359 (Tex. App.—Amarillo 1999, no pet.) (holding that statement made by defendant that she did "not know if she wanted to talk" expressed ambivalence toward waiving her rights and was not an unambiguous assertion of right to remain silent); *see also Baez v. State*, No. 14-07-00426-CR, 2008 WL 4915682, at *4 (Tex. App.—Houston [14th Dist.] Nov. 18, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that defendant's inquiry of "do I have to say" expressed ambivalence toward waiving his rights but did not unambiguously or clearly express definite desire to invoke right to remain silent).

Further, when taking an even broader look at the interview and the circumstances surrounding Williams's statements—even considering the lengthy colloquy taken from the interview and transcribed in Williams's own brief—a reasonable interpretation of Williams's statements is that he was considering

12

whether talking to Payne would make him look bad to his accomplice. Indeed, the second session began with Payne explaining to Williams that he had already obtained the statement of Williams's accomplice. Payne also discussed with Williams that he wanted Williams to "get [his] side of the story out," a notion that Williams's affirmatively agreed to multiple times at the beginning of Payne's portion of the interview.

Additionally, and during the conversation that included his alleged invocation of the right to terminate the interview, both Payne and Castillo reminded Williams that Castillo had warned Williams of his rights, and they both inquired whether he still wanted to continue the interview. Considering the totality of the circumstances, we hold that Williams's statement, "I really just don't know, and for . . . to say anything else" was not a clear and unambiguous invocation of his right to remain silent. *See Kupferer v. State*, 408 S.W.3d 485, 489–90 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (defendant's statement that "To tell you the truth, I really don't want to talk about it, but I mean . . ." was not unambiguous invocation of right to remain silent). We overrule this portion of Williams's point.

### 3. The Record Does Not Support That Castillo and Payne Interfered With Williams's Alleged Repeated Attempts to Terminate the Interview

Williams argues that he repeatedly attempted to terminate the interview but that Castillo and Payne "drowned out" his attempts by interrupting him and talking over him. To this, Williams alleges that his "videotape[d confession] is

13

replete with examples of both detectives cutting off or ignoring [his] responses." In support of his position, Williams provides this court with what he calls a transcript of the interview. This transcript was not introduced into evidence at trial and is not a part of the appellate record. Thus we cannot consider it in our review. *See Vanderbilt v. State*, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981), *cert. denied*, 456 U.S. 910 (1982). We do note, however, that of the multiple instances in the transcript in which Williams claims he was interrupted by police and prevented from invoking his rights, the only statement that even comes close to being an invocation-type statement is the one discussed above that we have held was not an unambiguous statement that he wished to terminate the interview.

Williams also attaches to a statement by the trial court made during the first pretrial suppression hearing, where the trial court seemed to be inclined to make a finding that Williams had attempted to invoke his right to terminate the interview but that he was interrupted. But after the trial court conducted two more suppression hearings during which it considered multiple oral and written arguments by both parties, and an agreed-to, audio-enhanced version of the videotaped confession, the trial court specifically found that, "At no time during the interview did [Williams] ask for an attorney or to terminate the interview or invoke his rights to terminate or any of the other rights contained in the Texas Code of Criminal Procedure, Article 38.22, or his . . . Fifth Amendment rights."

14

When determining whether police officers violated a defendant's rights by continuing to question, the threshold question is whether the suspect invoked his rights. *Luna v. State*, 301 S.W.3d 322, 325 (Tex. App.—Waco 2009, no pet.). Williams has not pointed to any evidence in the record that undermines the trial court's finding that he never attempted to invoke his rights. In fact, Williams does not even address this specific finding by the trial court. We have reviewed the record, including watching all versions of the interview that were provided to the trial court during the suppression hearings, and we hold that when viewing the evidence in the light most favorable to the trial court's finding, Williams never invoked any of his statutory or constitutional protections. *Kelly*, 204 S.W.3d at 818–19. We overrule the remainder of Williams's sole point.

## IV. CONCLUSION

Having overruled Williams's sole point in its entirety, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: December 5, 2013

15