ORIGINAL    NO. __1245-15__

TO THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 23 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

SEP 23 2015

Abel Acosta, Clerk

EMANUEL PAUL GRIFFITH    APPELLANT

VS.

THE STATE OF TEXAS    APPELLEE

ON APPEAL FROM CAUSE NO. 12-1537

IN THE CRIMINAL DISTRICT (DRUG IMPACT COURT)

OF JEFFERSON COUNTY, TEXAS

FROM THE COURT OF APPEALS

FOR THE NINTH COURT OF APPEALS

NO. 09-13-00383 CR

PETITION APPELLANT'S FOR DISCRETIONARY REVIEW

EMANUEL P. GRIFFITH
#1880592 RAMSEY 1 UNIT
1100 FM 655
ROSHARON TEXAS 77583

TOP

NO. _____

IN THE

COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

EMANUEL PAUL GRIFFITH

APPELLANT

VS.

THE STATE OF TEXAS

COURT OF APPEALS NO. 09-13-00383-CR

TRIAL COURT NO. 12-15371

JEFFERSON COUNTY, TEXAS

# TABLE OF CONTENTS

TABLE OF CONTENTS .......................... PG.1

INDEX OF AUTHORITIES ...................... PG.2

RULES AND STATUTES ........................ PG.3

STATEMENT REGARDING ORAL ARGUMENT ........ PG.4

STATEMENT OF CASE .......................... PG.4

STATEMENT OF PROCEDURAL HISTORY .......... PG.5

GROUNDS FOR REVIEW ........................ PG.6,7,8

ARGUMENTS ................................. PG.9

PRAYER AND RELIEF ......................... PG.10

INMATE'S DECLARATION ...................... PG.11

CERTIFICATE OF SERVICE .................... PG.12

# INDEX OF AUTHORITIES

CASH EXPARTE    178, S.W. 3D 816, 818

   ( TEX, CR. APP. 2005 ) .................... PG. 4

CHAPMAN V. STATE    921, S.W. 2D 694, 695

   ( TEX, CR. APP. 1996 ) .................... PG. 7

FISCHER V STATE    252, S.W. 3D, 375

   ( TEX. CR. APP. 2008 ) .................... PG. 5

GARZA V STATE    126, S.W. 3D 79, 85

   ( TEX. CR. APP. 2004 ) .................... PG. 7

JONES V STATE    338, S.W. 3D, 725

   ( TEX. APP. DIST 1 2011 ) .................... PG 7

MENDOZA V. STATE    959, S.W. 2D, 321, 326-327

   ( TEX. APP 10 DIST. 1997 ) .................... PG. 4

MISSOURI V. SEIBERT    542 U.S. 600, 622, 124, I CT.

   2601, 158 LED. 2D, 643 ( 2003 ) .................... PG. 5

RODRIGUEZ V. STATE    239, S.W. 3D, 277, 280

   ( TEX. APP. 7 DIST. 2007 ) .................... PG. 7

STRICKLAND V WASHINGTON    466, U.S. 668, 694,

   104 S.CT. 2052, 80 LED, 2D 674 ( 1984 ) ..... PG 4

# RULES AND STATUTES

TEXAS CODE OF CRIMINAL PROCEDURE.

ARTICLE 38.23 . . . . . . . . . . . . . . . . . PG 3, 5, 7, 8,

TEXAS RULES OF EVIDENCE.

RULE 104 (d) . . . . . . . . . . . . . . . . PG. 4

## PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES, OF THE COURT OF CRIMINAL APPEAL.

COMES NOW, EMANUEL PAUL GRIFFITH, KNOWN AS HEREIN AFTER AND FILES THIS HIS PETITION PRO-SE FOR DISCRETIONARY REVIEW (P.D.R.) IN SUPPORT OF PETITIONERS P.D.R. THE APPELLANT WILL SHOW THE COURT THE FOLLOWING:

## STATEMENT REGARDING ORAL ARGUMENTS

APPELLANT REQUESTS THAT ORAL ARGUMENTS BE WAIVED AT THIS TIME.

## STATEMENT OF CASE

THE APPELLANT WAS CONVICTED IN THE CRIMINAL DISTRICT COURT (DRUG IMPACT COURT) OF JEFFERSON COUNTY, TEXAS. FOR THE OFFENSE OF: POSSESSION OF A CONTROLLED SUBSTANCE COCAINE IN AN AMOUNT OF (4) FOUR GRAMS OR MORE BUT LESS THAN (200) TWO HUNDRED GRAMS EN-HANCED W/ (1) ONE PRIOR CONVICTION 1ST DEGREE FELONY. CAUSE NO. 12.13545 STYLED AT THE STATE TEXAS VS. EMANUEL PAUL GRIFFITH

ON JULY 4, 2013 THE JURY FOUND THE APPELLANT GUILTY

OF SAID CRIME.

THE APPELLANT WAS DENIED HIS (6) SIX AMEND-MENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL. THE APPELLANT COURT ALSO REFUSED TO SEE THAT THE TRIAL COURT COMMITTED A REVERSEABLE ERROR BY NOT INCLUDING A JURY CHARGE AS PROVIDED IN THE TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.23.

## STATEMENT OF PROCEDURAL HISTORY

ON JULY 09, 2013 APPELLANT WAS FOUND GUILTY BY A JURY FOR THE OFFENSE OF (4) FOUR GRAMS OR MORE BUT LESS THAN (200) TWO HUNDRED W/ 1 ONE ENHANCEMENT IN THE (DRUG IMPACT COURT) JEFFERSON COUNTY, TEXAS

ON MARCH 07, 2013 A HEARING WAS HELD TO CONSIDER THE DEFENSES MOTION TO DISCLOSE THE CONFIDENTIAL IN-FORMANT (CI) THE TRIAL COURT FAILED TO DISCLOSE.

ON JULY 09, 2013 APPELLANT WAS FOUND GUILTY. ON AUGUST 5, 2013 THE COURT SENTENCED APPELLANT TO (20) TWENTY YEARS IN THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE

THE DEFENDANT RIGHT TO APPEAL WAS FILED ON AUGUST 5, 2013 APPELLANT FILED A TIMELY NOTICE OF

APPEAL ON AUGUST 19, 2013.

THERE WAS NO MOTION FOR REHEARING FILED

APPELLANT'S PETITION FOR DISCRETIONALY REVIEW WILL

FILED W/ THE COURT OF CRIMINAL APPEALS BY THE

DATE OF SEPTEMBER 30, 2015

## GROUNDS FOR REVIEW

### GROUND NO. 1.

APPELLANT ARGUES THAT HIS TRIAL COUNSEL'S

PERFORMANCE WAS DEFICIENT. STRICKLAND VS. WASHINGTON

466, US. 668, 694, 104, S. CT. 2052, 80, L.ED. 20. 674,

1984 EX-PARTE 178. S. W. 3D 816-818 (TEX CR. APP. 2005).

THE HEARING ON THE MOTION TO DISCLOSE INFORMANTS

INDENTITY THE LINE OF QUESTIONING WERE NOT RELEVANT

TO THE ISSUE OF WETHER THE CI INDENTITY WOULD

BE DISCLOSED. MENDOZA V. STATE 959. S.W. 2D 321 326-

327 (TEX. APP. 10 DIST. 1997 TEXAS RULES OF EVIDENCE

RULE 104 (D).

THE FAILURE TO OBJECT BY DEFENSE COUNSEL JUST

RE-INFORCED ANOTHER ERRONEOUS ASSUMPTION THAT

APPELLANT'S CONFESSION AT THE SCENE (ST. EX. #2)

WAS ADMISSIBLE.

MISSOURI V. SEIBERT 542, US. 600, 622 124, S. CT. 2601, 158 L. ED. 2D 643, (2003) CARTER VS, STATE 309, S.W. 3D 31, 35-36( TX. CL APP 2010)

ALSO APPELLANT ARGUES THAT WHILE THE OFFICER WAS FILMING, THE OFFICER WAS MAKING COMMENTS WHICH WERE BLANTLY VIOLATION OF THE HEAR-SAY RULE. THE OFFICER WENT ON AND ON IN THE VIDEO TO BUILD THE CI CREDIBILITY DURING THE TRIAL WITH NO OBJECTION FROM DEFENSE ATTORNEY FISCHER J. STATE 252, S.W. 3D 375.

APPELLANT SUBMITTS THAT THE TRIAL COUNSEL POORLY ADVISED APPELLANT FROM THE BEGINNING OF TRIAL AND REFUSE TO OBJECT ON THE IRRELEVANT QUESTIONS THAT INVOLVED IN THIS CASE.

GROUND NO. 1 WILL BE FOUND IN APPELLANTS BRIEF. ON PAGES 11-18

GROUND 2.

APPELLANT TRIAL COUNSEL REQUESTED A JURY CHARGE AS PROVIDED IN THE TEXAS CODE OF CRIMINAL PROCEDURE (38.23 ARTICLE) THE TRIAL JUDGE ACKNOWLEGED THAT HE KNEW WHAT THE TRIAL COUNSEL WAS PROPOSING AND DENIED THE REQUEST CHAPMAN VS. STATE 921 SW 2D 694-695 (TEX CR APP. 1996)

A JURY INSTRUCTION IS REQUIRED WHEN THERE IS A FACTUAL DISPUTE REGARDING THE LEGALITY OF THE SEIZURE OF EVIDENCE GARZA US STATE 126 S.W. 3D 79, 85 (TX CR. APP. 2004) RODRIGUEZ US STATE 239 SW 3D 277. 280 (TEX CR. APP 2007).

THEREFORE APPELLANTS TESTIMONY CREATED A FACTUAL DISPUTE REGARDING PROBABLE CAUSE THAT LED TO THE SEARCH OF HIS RESIDENCE THE TRIAL SHOULD HAVE SUBMITTED A PROPER CHARGE AS PROVIDED IN THE TEXAS CODE OF CRIMINAL PROCEDURE ARTICLE 38.23(A) JONES VS STATE 338 SW 3D 725 (TEX CR APP 1 DIST. 2011) THE COURT IS ALSO REQUIRED TO CONDUCT A HARMLESS ERROR REVIEW TO DETERMINE WETHER THE ERROR IN REFUSING THE CHARGE WAS HARMFUL TO THE APPELLANT.

GROUND NO 2 WILL BE FOUND IN APPELLANT'S BRIEF PAGE 19 - 20

# ARGUMENTS

IN ISSUE NO. 1 APPELLANT ARGUES THAT HIS (6) SIX AMENDMANT RIGHT UNDER THE CONSTITUTION OF THE UNITED STATES TO EFFECTIVE ASSISTANCE OF COUNSEL DURING THE GUILT PHASE OF THE TRIAL WAS VIOLATED BY THE DEFICIENT PERFORMANCE OF HIS TRIAL ATTORNEY, AS A RESULT, THE CONVICTION IN THIS CAUSE OF ACTION SHOULD BE REVERSED AND A NEW TRIAL ORDERED.

---

IN ISSUE NO. 2 APPELLANT ARGUES THAT HIS TESTIMONY, TO THE EFFECT THAT HE HAD NOT SOLD ANY DRUGS FROM HIS HOUSE WITHIN THE THREE (3) DAY PERIOD PRIOR TO THE SEARCH, RAISED THE ISSUE OF THE LEGALITY OF THE SEARCH OF HIS RESIDENCE, AND THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE REQUEST FOR A JURY CHARGE IN COMPLIANCE WITH TEXAS CODE OF CRIMINAL PROCEDURE, ARTICLE 38.23

## PRAYER AND RELIEF

WHERE FORE, PREMISES CONSIDERED, APPELLANT PRAYS THAT THIS HONORABLE COURT FIND THAT APPELLANT RECIEVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE 6 AMENDMANT TO THE UNITED STATE CONSTITUTION.

OR THAT THE TRIAL COURT COMMITTED REVERABLE ERROR BY DENYING THE REQUESTED JURY CHARGE IN COMPLIANCE WITH THE TEXAS CODE OF CRIMINAL PROCEDURE, ARTICLE 38.23 (A) REVERSE THE CONVICTION IN THIS HIS CASE AND ORDER A NEW TRIAL.

RESPECTFULLY SUBMITTED,

Emanuel Paul Griffith

EMANUEL PAUL GLIFFITH

#1880592 RAMSEY 1

1100 FM 655

ROSHARON TEXAS 77583

## INMATES DECLARATION

I, EMANUEL PAUL GRIFFITH, #1880592 BEING PRESENTLY INCARCERATED IN THE TEXAS DEPARTMENT CRIMINAL JUSTICE, DECLARE UNDER THE PENALTY OF PERJURY THAT ACCORDING TO MY BELIEF THE FOREGOING INFORMATION AND ALLEGATIONS OF THIS APPLICATION IS TRUE AND CORRECT.

DATE _9-16-15_

SIGNATURE _Emanuel Paul Griffith_

TDCJ NO. _# 1880592_

PAGE II

# CERTIFICATE OF SERVICE

I, EMANUEL PAUL GRIFFITH, DO HEREBY CERTIFY THAT A TRUE AND CORRECT COPY OF THE FOREGOING PETITION HAS BEEN SENT VIA:

UNITED STATES POSTAL SERVICE

TO THE FOLLOWING ADDRESS

COURT OF CRIMINAL APPEALS
P.O. BOX 12308
AUSTIN, TEXAS          78711

RESPECTFULLY
SUBMITTED,

EMANUEL PAUL GRIFFITH
# 1880592  RAMSEY 1 UNIT
1100 FM 655
ROSHARON, TEXAS  77583

# IN THE NINTH COURT OF APPEALS

---

## 09-13-00383-CR

---

Emanuel Paul Griffith

v.

The State of Texas

---

On Appeal from the
Criminal District Court of Jefferson County, Texas
Trial Cause No. 12-15371

---

## JUDGMENT

THE NINTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be affirmed. IT IS THEREFORE ORDERED, in accordance with the Court's opinion, that the judgment of the trial court is affirmed.

Opinion of the Court delivered by Justice Charles Kreger

August 31, 2015

### AFFIRMED

\*\*\*\*\*\*\*\*\*\*

Copies of this judgment and the Court's opinion are certified for observance.

Carol Anne Harley
Clerk of the Court

# In The

## Court of Appeals

## Ninth District of Texas at Beaumont

_____

### NO. 09-13-00383-CR

_____

### EMANUEL PAUL GRIFFITH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 12-15371

## MEMORANDUM OPINION

Appellant Emanuel Paul Griffith appeals his conviction for possession of a controlled substance, namely cocaine, in an amount of at least four grams or more and less than two hundred grams. Upon Griffith's plea of "true" to two enhancement allegations, the trial court assessed Griffith's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of twenty years. In two issues, Griffith contends that the trial court erred by denying his request for a jury instruction in accordance with article

1

38.23(a) of the Texas Code of Criminal Procedure and that he received ineffective assistance of counsel during the guilt-innocence phase of trial. We affirm.

## I. Background

On August 6, 2012, a detective with the Jefferson County Narcotics Task Force arranged a controlled buy of narcotics by a confidential informant from a residence located in Port Arthur, Texas. As the detective and his partner, a sergeant, watched from their vehicle, the confidential informant drove her vehicle to the residence and walked around to the back of the house. Shortly thereafter, the confidential informant emerged from the back of the residence, got into her vehicle, and drove to a predetermined location, where she met with the detective and the sergeant and handed them crack cocaine that she said she purchased from Griffith inside the residence.

On August 7, 2012, the detective prepared and submitted an affidavit to obtain a warrant to search the residence and to arrest Griffith. Based on the affidavit, a magistrate judge issued a search and arrest warrant that afternoon.

On August 8, 2012, the detective, the sergeant, and other officers executed the warrant and located Griffith inside the residence. No one else was found in the home. During the search of the premises, the officers recovered approximately twenty grams of crack cocaine, a 9-millimeter semi-automatic pistol, a loaded .38

Special revolver, $1,219 in cash, weigh scales, and a duffle bag containing additional weigh scales and other items used in the manufacture of crack cocaine. Griffith was arrested and charged by indictment with possession of a controlled substance. He was subsequently convicted by a jury for the charged offense and sentenced to twenty years in prison.

## II.   Jury Charge

In his second issue, Griffith argues that the trial court erred by denying his request for a jury instruction under article 38.23(a) of the Texas Code of Criminal Procedure. Specifically, he claims that the evidence at trial raised a fact issue regarding whether probable cause existed to support a warrant for the search of Griffith's residence and that the trial court was therefore required to include an article 38.23(a) instruction in the jury charge.

Appellate review of a claim of jury charge error involves a two-step analysis. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). First, we must determine whether error in the jury charge exists. *Sakil v. State*, 287 S.W.3d 23, 25 (Tex. Crim. App. 2009). If error is found, we must analyze that error for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). "The degree of harm necessary for reversal depends on whether the appellant preserved the error by objection." *Id.* If error exists and the appellant objected to the error at trial,

reversal is required if we find that the error resulted in "'*some* harm'" to the appellant's rights. *Id.* (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If the appellant failed to properly object or stated that he had no objection to the charge, we will reverse only if the record reflects egregious harm to the appellant. *Sakil v. State*, 287 S.W.3d at 26; *Ngo*, 175 S.W.3d at 743-44.

Article 38.23(a) provides that "[n]o evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused" at trial. Tex. Code Crim. Proc. Ann art. 38.23(a) (West 2005). "When evidence presented before the jury raises a question of whether the fruits of a police-initiated search or arrest were illegally obtained, 'the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.'" *Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) (quoting Tex. Code Crim. Proc. Ann. art. 38.23(a)).

A defendant's right to the submission of an instruction under article 38.23(a) "is limited to disputed issues of fact that are material to his claim of a constitutional or statutory violation that would render evidence inadmissible."

4

*Madden v. State*, 242 S.W.3d 504, 509-10 (Tex. Crim. App. 2007). To be entitled to a jury instruction under article 38.23(a), the defendant must meet three requirements: "(1) [t]he evidence heard by the jury must raise an issue of fact; (2) [t]he evidence on that fact must be affirmatively contested; and (3) [t]hat contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Id.* at 510. There must be a genuine dispute about a material issue of historical fact before an article 38.23 instruction is warranted. *Id.* If there is no disputed issue of fact, the legality of the challenged conduct is determined by the trial court alone as a matter of law. *Id.* Further, if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not material to the ultimate admissibility of the evidence and is not to be submitted to the jury. *Id.* The disputed fact issue must be essential to determining the lawfulness of the challenged conduct. *Id.* at 511. If the defendant successfully raises a disputed, material issue of fact regarding whether evidence was illegally obtained, an article 38.23(a) instruction is mandatory and must be included in the jury charge. *Robinson*, 377 S.W.3d at 719.

The search and arrest warrant and its supporting probable cause affidavit, both of which were dated August 7, 2012, were admitted into evidence at trial. In the probable cause affidavit, the detective, as affiant, stated that: (1) on or about

5

August 6, 2012, he received information concerning drug activity from a confidential informant; (2) the confidential informant had been at the residence within the past seventy-two hours and had "personally observed [Griffith] in possession/control of a useable quantity" of crack cocaine and "in the act of selling crack cocaine"; (3) through the supervision of the Jefferson County Narcotics Task Force, the confidential informant made a purchase of crack cocaine from Griffith at the residence; and (4) the confidential informant "stated that she observed more crack cocaine and rolls of cash ($100 bills)" at the residence "while making the . . . controlled purchase." The probable cause affidavit also contained the following statements regarding the confidential informant:

> Said [confidential informant] is familiar with the appearance, packaging, handling, use, and methods by which the aforesaid illegal substance is introduced into the human body. Further, said [confidential informant] is reliable and credible based on the fact that said [confidential informant] has given information verified as truthful, reliable, and credible in the past. Said [confidential informant] has performed approximately 6 controlled purchases of illegal narcotics from suspected narcotic dealers, which have resulted in other ongoing narcotic investigation[s]. These controlled purchases were made through the supervision of the Jefferson County Narcotics Task Force. Also, I have received information from said [confidential informant] on several occasions, in the recent past, which has proven to be true and correct each time. I have followed up on information given by the [confidential informant] and have been able to corroborate it as being truthful.

At trial, the detective provided testimony that was largely consistent with the allegations contained in the probable cause affidavit. The detective testified that on August 6, 2012, after being contacted by a confidential informant, he arranged for the confidential informant to make a controlled buy of narcotics from the residence. The detective testified that he had used this particular confidential informant "numerous times" before that date and that the information the confidential informant had provided to him in the past had proven to be true and accurate on each occasion. The detective testified that before sending the confidential informant to the residence to purchase the narcotics, he and the sergeant searched the confidential informant and her vehicle to ensure that she had no narcotics on her person or in her vehicle. The detective then gave the confidential informant money and sent her to the residence to perform the purchase. The detective testified that as he and the sergeant watched, the confidential informant drove her vehicle to the residence, parked in the driveway, and walked around to the back of the house. Later, the confidential informant emerged from the back of the residence, got into her vehicle, and drove to a predetermined location, where she met with the detective and the sergeant. The detective testified that once at the predetermined location, the confidential informant handed the detective and the sergeant "the crack cocaine that she had

7

purchased from inside the house" and informed the officers that "there was . . . crack cocaine in the house."

The sergeant testified that the controlled buy took place at approximately 4 p.m. on August 6, 2012. He corroborated the detective's testimony that before the transaction, they searched the confidential informant and her vehicle to ensure that the confidential informant had no narcotics. Later, the sergeant saw the confidential informant go to the residence and walk around to the back of the house. The sergeant testified that although he did not see the confidential informant actually enter the residence, the confidential informant later told him that she entered the house through the back door and purchased narcotics while inside the house. The sergeant further testified that the confidential informant provided the officers with a detailed description of the layout of Griffith's house and told them where drugs and a firearm were located inside the residence. He testified that he had worked with the confidential informant on over thirty occasions and that she had never once provided him with incorrect information.

Griffith testified that on August 6, 2012, he went to work at 7 a.m. and did not return home until 4:15 p.m. Griffith denied that he was at home at 4 p.m. when the sergeant claimed the controlled buy occurred, denied that anyone entered his house, and denied selling narcotics to anyone.

8

After the close of evidence, the trial court held a charge conference, during which defense counsel requested a jury instruction under article 38.23. Defense counsel did not identify the disputed issues of historical fact that he claimed gave rise to the need for an article 38.23 instruction, and he did not submit a proposed instruction in writing. The trial court ultimately denied the requested instruction.

Griffith argues that he was entitled to an article 38.23(a) jury instruction because there was a factual dispute regarding whether the confidential informant ever entered the residence and purchased narcotics from Griffith while inside. Specifically, Griffith argues that his testimony at trial—that no one entered his house on August 6, 2012, and that he did not sell narcotics to anyone—directly contradicts the statements in the probable cause affidavit and the officers' testimony that the confidential informant entered Griffith's residence on August 6, 2012, and purchased narcotics from Griffith while inside his home. Griffith contends that he is not claiming that the detective made false statements in the probable cause affidavit, "but rather that [the officers] could have been mistaken in relying on the veracity of the [confidential informant] and that there was a possibility that the [confidential informant] lied to the officers," which, he contends, "still presents a situation authorizing the requested jury charge because the [confidential informant's] representations constituted the probable cause in the

search warrant affidavit, and therefore, were material to the lawfulness of the search."

The disputed fact issues identified by Griffith go to the truthfulness of statements that were made by the confidential informant and on which the detective relied to establish probable cause in his affidavit. Even assuming, that Griffith's allegations regarding the confidential informant's veracity are true, they would have no bearing on whether the magistrate had probable cause to issue the warrant.

In determining whether probable cause exists to support the issuance of a search warrant, the task of the issuing magistrate is to determine "whether, given all the circumstances *set forth in the affidavit before him*, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added); *Hennessy v. State*, 660 S.W.2d 87, 89 (Tex. Crim. App. [Panel Op.] 1983). The magistrate must determine whether probable cause exists based solely on the facts contained in the probable cause affidavit and any reasonable inferences drawn from those facts. *Kennedy v. State*, 338 S.W.3d 84, 91-92 (Tex. App.—Austin 2011, no pet.);

*Borsari v. State*, 919 S.W.2d 913, 918 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

When a probable cause affidavit is based on information received from an informant, the informant's veracity, reliability, and basis of knowledge are relevant considerations in the determination of whether probable cause exists. *Gates*, 462 U.S. at 230, 233. These factors are not "entirely separate and independent requirements to be rigidly exacted in every case[.]" *Id.* at 230. Rather, "they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question [of] whether" probable cause exists, and "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 230, 233. Significantly, however, any showing of the informant's veracity, reliability, or basis of knowledge must be set forth in the probable cause affidavit, and the magistrate must analyze the existence and strength of those factors, as well as their overall effect on the existence of probable cause, based solely on the information contained in the affidavit. *See id.* at 238.

Further, while the Fourth Amendment demands that there be a truthful showing of facts sufficient to establish probable cause, "[t]his does not mean 'truthful' in the sense that every fact recited in the [probable cause] affidavit is

11

necessarily correct," since "probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978). Rather, the Fourth Amendment requires the probable cause affidavit to make a truthful showing "in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* at 165; *see also McCray v. Illinois*, 386 U.S. 300, 307 (1967) (explaining that when determining whether probable cause exists to support a search warrant, "the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told.") (internal citations omitted).

In the present case, Griffith does not argue that the facts set forth in the supporting affidavit, on their face, are insufficient to constitute probable cause. Griffith also does not argue that the detective, as the affiant for the probable cause affidavit, did not reasonably believe the information he received from the confidential informant or that the detective made false statements in the affidavit. Rather, Griffith contends that a fact issue exists as to whether the confidential informant was actually telling the truth when she told the detective and the sergeant that she entered Griffith's residence on August 6, 2012, and purchased

12

narcotics from Griffith inside his home. However, even assuming that the confidential informant was lying to the officers when she made those statements, that fact is irrelevant to the determination of whether the magistrate had probable cause to issue the search warrant as long as the totality of the circumstances set forth in the probable cause affidavit, including any facts showing the veracity, reliability, or basis of knowledge of the confidential informant, established that there was a fair probability that contraband or evidence of a crime would be found in Griffith's residence. *See Gates*, 462 U.S. at 238; *Franks*, 438 U.S. at 164-65.

The probable cause affidavit contains allegations that the confidential informant had provided the detective with information on several occasions in the recent past and that such information had proven to be true and correct in each instance. This allegation was sufficient to establish the credibility of the confidential informant. *See Avery v. State*, 545 S.W.2d 803, 804-05 (Tex. Crim. App. 1977); *Blake v. State*, 125 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Further, the affidavit demonstrates the source of the confidential informant's knowledge in that it states that the confidential informant had been inside the premises to be searched within the seventy-two hours preceding the submission of the affidavit, that the confidential informant personally observed Griffith in possession of crack cocaine, and that the confidential informant made a

13

controlled purchase of narcotics from Griffith while inside the premises. *See Daniels v. State*, 999 S.W.2d 52, 56 (Tex. App.—Houston [14th Dist.] 1999, no pet.). The affidavit also alleges that the confidential informant is familiar with the appearance, packaging, handling, use, and methods by which crack cocaine is introduced into the human body and, thus, demonstrates that the confidential informant is qualified to recognize the drug at issue in this case. Nothing in the probable cause affidavit indicates that the confidential informant was untruthful in the information she provided to the detective.

The allegations contained within the four corners of the affidavit were sufficient to justify a finding of probable cause to search Griffith's residence. *See State v. Griggs*, 352 S.W.3d 297, 302-03 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (concluding that allegations in probable cause affidavit that confidential informant made a controlled purchase of narcotics at the alleged location within the forty-eight hours before the affidavit was submitted, combined with allegations that confidential informant had provided accurate information to police on three prior occasions, were sufficient to constitute probable cause); *Daniels*, 999 S.W.2d at 56 (concluding that allegations in probable cause affidavit that affiant had relied on confidential informant in twenty prior investigations and that confidential informant had proven to be reliable and credible, combined with allegations that

14

the confidential informant had been inside the alleged premises within the past forty-eight hours and had personally observed appellant in possession of cocaine, were sufficient to constitute probable cause for search warrant). We conclude that the fact issue raised by Griffith—i.e., whether the confidential informant was, in fact, truthful when she told the detective and the sergeant that she entered Griffith's residence on August 6, 2012 and purchased narcotics from him—is not material to the question of whether the magistrate had probable cause to issue the search warrant and is, thus, not material to the lawfulness of the search of Griffith's residence. *See Madden*, 242 S.W.3d at 510. The trial court, therefore, did not err in denying Griffith's request to include an article 38.23(a) instruction in the jury charge. *See id*. We overrule Griffith's second issue.

## III. Ineffective Assistance of Counsel

In his first issue, Griffith argues that he was denied effective assistance of counsel. A defendant facing criminal prosecution has the right to the effective assistance of counsel. *See* U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). To prevail on a claim of ineffective assistance of counsel, the defendant "must first show that his counsel's performance was deficient." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To make this showing, the defendant

must prove that his counsel's representation fell below an objective standard of reasonableness based on prevailing norms. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Second, the defendant must show that counsel's deficient performance prejudiced his defense. *Bone*, 77 S.W.3d at 833. To demonstrate prejudice, a defendant "must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Garza v. State*, 213 S.W.3d 338, 348 (Tex. Crim. App. 2007). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Bone*, 77 S.W.3d at 833. "This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result." *Thompson v. State*, 9 S.W.3d 808, 812-13 (Tex. Crim. App. 1999). A defendant must make a sufficient showing on both components of this standard to succeed on his claim. *Id.* at 813.

Appellate review of defense counsel's representation is highly deferential, and we must indulge a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance. *Id.* In evaluating the effectiveness of counsel, we review the totality of the representation and the particular circumstances of each case. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex.

16

Crim. App. 2011). We must also make every effort to eliminate the distorting effects of hindsight, reconstruct the circumstances, and evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689. An allegation of ineffectiveness will be sustained only if it is firmly founded in the record and if the record affirmatively demonstrates the alleged ineffectiveness. *Thompson*, 9 S.W.3d at 813. The burden is on the appellant to prove by a preponderance of the evidence that his trial counsel was ineffective. *Id.*

Usually, a direct appeal is an inadequate method to present a claim for ineffective assistance of counsel because the record is undeveloped and does not adequately reflect the reasons for defense counsel's actions at trial. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Before we denounce trial counsel's actions as ineffective, counsel should normally be given an opportunity to explain the challenged actions. *Id.* When counsel has not been given an opportunity to explain the challenged actions, we will only find deficient performance if the conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (internal citations omitted).

## A. Failure to Object to Videotaped Confession Based on Griffith's Invocation of Right to Remain Silent

Griffith asserts that trial counsel was deficient in failing to object to the admissibility of Griffith's videotaped confession on the ground that the confession occurred after he unambiguously invoked his right to remain silent. The record reflects that the detective and the sergeant conducted a videotaped interview of Griffith at his residence shortly after they executed the search and arrest warrant. The videotaped interview was admitted into evidence during the guilt stage of trial. The beginning of the video depicts the sergeant advising Griffith of his *Miranda* rights, immediately after which the following exchange takes place:

Sergeant:    You understand those rights, sir?

Griffith:    [Nods head up and down]

Sergeant:    You have any questions before we proceed?

Griffith:    No. [Shakes head from side to side]

Sergeant:    Okay. If I ask you some questions, are you willing to answer them for me?

Griffith:    [Shrugs] [inaudible] -- I don't think so . . .

Sergeant:    You don't think so?

Griffith:    -- because I'm not . . . I don't . . . What questions you wanna ask me? I mean, I don't . . . no. You did what you did. The only question I ask is -- only question I

18

wanna know is -- you say that I'm set up. Who -- what made you come here and [inaudible] kick my door in? I don't do nothing out of this house.

Sergeant: Okay. Well, we -- we executed the search warrant here. And, when we talked to you, you --

Griffith: Correct.

Sergeant: -- told us that you had some guns in the house --

Griffith: I told you everything --

Sergeant: -- and you told us that you had some crack cocaine --

Griffith: -- I told you --

Sergeant: -- in the house, correct?

Griffith: Right.

Sergeant: Okay. Is that your -- and that was your crack cocaine, right?

Griffith: Right.

Sergeant: There in the house? Okay. You told us where it was, you admitted that that was yours, correct?

Griffith: Exactly. And, I told you -- and them guns, that was for my protection.

Griffith contends that his statements, "I don't think so" and then, "no[,]" constituted an unambiguous invocation of his right to remain silent. He argues, therefore, that any statements following his invocation of his rights were

19

inadmissible and that trial counsel was deficient in failing to object to the admissibility of those statements at trial.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "Consistent with this Fifth Amendment guarantee, law enforcement officials, before questioning a person in custody, must inform him that he has the right to remain silent and that any statement he makes may be used against him in court." *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (footnote omitted). "If the individual [in custody] indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966). The suspect is not required to use any particular phraseology to invoke the right to remain silent. *Ramos*, 245 S.W.3d at 418. However, an interrogating officer is not required to terminate his questioning unless the suspect's invocation of his rights is unambiguous. *Id.* Further, "[a] police officer is permitted, but not required, to clarify a suspect's wishes when faced with an ambiguous invocation of the right to remain silent." *Kupferer v. State*, 408 S.W.3d 485, 489 (Tex. App.— Houston [1st Dist.] 2013, pet. ref'd). Courts must look to the totality of the circumstances in determining whether the right to remain silent was

unambiguously invoked. *Id.* "Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances." *Id.*

As indicated above, after the sergeant advised Griffith of his *Miranda* rights and confirmed that Griffith understood those rights, the sergeant asked Griffith if he was willing to answer some questions. In response, Griffith shrugged his shoulders and then said, "[inaudible] . . . I don't think so . . . [.]" This statement, combined with Griffith's act of shrugging his shoulders, was not in itself a clear and unambiguous statement that Griffith was refusing to talk to the sergeant. *See Kupferer*, 408 S.W.3d at 490 (concluding that statement, "I really don't want to talk about it," was not in itself a clear and unambiguous statement of refusal to talk); *Mayes v. State*, 8 S.W.3d 354, 359 (Tex. App.—Amarillo 1999, no pet.) (concluding that appellant's statement that she did not know if she wanted to talk to police, "at best, expressed ambivalence towards waiving her rights"). Instead, it could have reasonably been interpreted as signaling indecision or uncertainty regarding whether Griffith should waive his rights. *See Kupferer*, 408 S.W.3d at 490.

The sergeant did not simply ignore this statement and continue questioning Griffith; instead, the sergeant sought to clarify Griffith's wishes before continuing the interview. However, before the sergeant could even finish his question, and less

21

than a second or two after saying, "I don't think so . . . [,]" Griffith continued speaking, stating:

> -- because I'm not . . . I don't . . . What questions you wanna ask me? I mean, I don't . . . no. You did what you did. The only question I ask is -- only question I wanna know is – you say that I'm set up. Who -- what made you come here and [inaudible] kick my door in? I don't do nothing out of this house.

Almost immediately after Griffith purportedly invoked his right to terminate the interrogation, he reinitiated the interrogation with his inquiry into what the officers wanted to ask him and why they were at his residence, and his denial of any wrongdoing. Griffith, therefore, did not clearly and unequivocally express a desire to remain silent; to the contrary, by continuing to communicate and ask questions of the officers, he signaled a desire to speak. Thus, we do not find Griffith's initial statement, "I don't think so . . . [,]" to be an unambiguous assertion of his right to remain silent. *See Mayes*, 8 S.W.3d at 359 (concluding that appellant's statement that "she did not know if she wanted to talk" was not an unambiguous invocation of right to remain silent, particularly when appellant, after making the statement, immediately launched into a denial of wrongdoing, thus signaling a desire to speak to police); *see also Juarez v. State*, No. 05-12-00125-CR, 2013 WL 3957008, *5 (Tex. App.—Dallas July 31, 2013, pet. ref'd) (not designated for publication) (concluding that appellant's statement, "I don't really want to talk, but I don't even

22

know what you're here for. [You] say ya'll are here from Richardson," was not an unambiguous invocation of right to remain silent, particularly when appellant questioned the officers about why they were there both before and after making the statement); *Davis v. State*, No. 06-05-00222-CR, 2007 WL 858782, *2, *3 (Tex. App.—Texarkana Mar. 23, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant's statement, "I really don't want to talk about it. I mean, I ain't the one that did it[,]" was not an unambiguous invocation of right to remain silent because appellant "reinitiated any interrogation with his immediate denial of wrongdoing made less than a second after the alleged invocation of his right to [remain silent]").

Griffith also contends that he said the word "no" in the midst of his response to the sergeant's question seeking clarification regarding Griffith's desire to answer questions. The record reflects that in responding to the sergeant's question seeking clarification about whether Griffith wanted to answer questions, and immediately after asking the sergeant what questions he wanted to ask him, Griffith said, "I mean, I don't . . . no. You did what you did." Based on our review of the videotaped interview, we find that when Griffith made this statement, he could have reasonably been understood as saying, "I don't . . . no[,]" as he contends, or he could have reasonably been understood as saying, "I don't . . .

23

know[,]" thus signaling further indecision or uncertainty as to whether he wished to waive his rights. We find that either the first or second interpretation is reasonable under the circumstances and that Griffith's statement was, therefore, ambiguous. *See Kupferer*, 408 S.W.3d at 489. However, even if Griffith did say, "I don't . . . no[,]" Griffith, once again, continued speaking immediately after making this statement, asking the sergeant to explain why officers were at his home and denying any wrongdoing. Thus, Griffith did not express a clear desire to remain silent. Based on the totality of the circumstances, we conclude that Griffith's statements did not unambiguously invoke his right to remain silent. *See Kupferer*, 408 S.W.3d at 490-91; *Mayes*, 8 S.W.3d at 359; *see also Juarez*, 2013 WL 3957008, at *5; *Davis*, 2007 WL 858782, at *3.

To successfully assert that the failure of trial counsel to object at trial constituted ineffective assistance of counsel, an appellant must show that the trial judge would have committed error in overruling the objection. *Ex parte Parra*, 420 S.W.3d 821, 824-25 (Tex. Crim. App. 2013). Because the record does not establish that Griffith unambiguously invoked his right to remain silent at the beginning of the videotaped interview, Griffith has not shown that the trial judge would have committed error in overruling an objection on that ground. *See id.* Further, trial counsel's reasons for not objecting to the admission of the videotaped confession

24

based on Griffith's invocation of the right to remain silent do not appear in the record. When the record is silent regarding trial counsel's strategy or reasons for his actions at trial, we will not speculate about why counsel acted as he did. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). Griffith has failed to show that trial counsel's performance was deficient on this ground.

**B. Failure to Object to Videotaped Confession Based on Officers' Use of "Question First, Warn Later" Interrogation Technique**

Griffith also argues that trial counsel was deficient in failing to object to Griffith's videotaped confession on the ground that Griffith "was subjected to an improper 'question first, warn later' interrogation technique," in violation of *Missouri v. Seibert*, 542 U.S. 600 (2004), and *Carter v. State*, 309 S.W.3d 31 (Tex. Crim. App. 2010). A "question first, warn later" interrogation technique refers to a strategy in which officers interrogate a suspect without providing *Miranda* warnings and obtain a confession; then, after the inculpatory statements are made, officers provide *Miranda* warnings, obtain a waiver of the warnings from the suspect, and have the suspect repeat the inculpatory statements to cure the initial absence of *Miranda* warnings. *See Seibert*, 542 U.S. 604-05.

In *Seibert*, a plurality of the Supreme Court concluded that a "question first, warn later" interrogation technique circumvents the objectives of *Miranda* by

25

rendering any warnings given ineffective. *Id.* at 613, 616-17. The *Seibert* plurality found that officers may use this interrogation technique to obtain a confession that the suspect may not have made if he had understood his rights at the outset. *Id.* at 613. In his concurring opinion, Justice Kennedy determined that when a two-step interrogation technique is used in a deliberate, calculated way to undermine *Miranda* warnings, a post-warning statement by the suspect must be excluded unless "curative measures" are taken before the post-warning statement is made. *Id.* at 622 (Kennedy, J., concurring).

In *Carter*, the Court of Criminal Appeals expressly adopted Justice Kennedy's concurrence in *Seibert*. 309 S.W.3d at 38. Accordingly, when a defendant receives *Miranda* warnings following an earlier violation of his *Miranda* rights, the threshold question in determining the admissibility of any post-warning statements is whether the officer "deliberately employed a two-step 'question first, warn later' interrogation technique to circumvent [the defendant's] *Miranda* protections." *Id.* The deliberateness determination "'will invariably turn on the credibility of the officer's testimony in light of the totality of the circumstances surrounding the interrogation.'" *Id.* at 39 (quoting *United States v. Stewart*, 536 F.3d 714, 719-20 (7th Cir. 2008)). If the officer did, in fact, deliberately employ a two-step interrogation technique to circumvent the defendant's *Miranda* rights, any

26

post-warning statements by the defendant must be excluded unless curative measures were taken before the post-warnings statements were made. *Vasquez v. State*, 411 S.W.3d 918, 919 (Tex. Crim. App. 2013).

The sergeant's statements in the videotaped interview suggest that he or other officers spoke to or questioned Griffith before the recorded interview began and, thus, before the sergeant advised Griffith of his *Miranda* rights on the video. The record, however, is silent with respect to the circumstances under which the prior questioning occurred. The record does not disclose whether Griffith was in custody at the time he was initially questioned by the officers,[1] and if he was in custody, the record does not indicate whether the officers advised Griffith of his *Miranda* rights and obtained a waiver of those rights before the initial questioning began. *See Ervin v. State*, 333 S.W.3d 187, 213 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (concluding that post-warning statement was not the product of a

---

[1] Although the record reflects that the officers had a search and arrest warrant at the time they searched Griffith's residence and suggests that the initial questioning occurred at some point after the officers arrived at the residence to execute the warrant, the record does not show whether Griffith was, in fact, in custody at the time of the initial questioning. *See Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996) (concluding that "custody" can be established by showing that "there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave[,]" but noting that "the officers' knowledge of probable cause [must] be manifested to the suspect" and the manifestation, combined with other circumstances, must be sufficient to "lead a reasonable person to believe that he is under restraint to the degree associated with an arrest").

"question-first" interrogation technique because suspect was not in custody during initial questioning). Even assuming Griffith was in custody and was not properly *Mirandized* before the initial questioning started, the record is silent regarding the length of the initial questioning, the officers' conduct and demeanor during the initial questioning, the scope and extent of the initial questioning, the amount of time that passed between the initial questioning and the videotaped interview, and other factors relevant to the determination of whether the officers deliberately employed a two-step interrogation technique for the purpose of circumventing Griffith's *Miranda* rights. *See Carter*, 309 S.W.3d at 40-41 (identifying and analyzing factors relevant to deliberateness inquiry).

Based on the record before us, Griffith has not demonstrated that the trial court would have erred in overruling an objection under *Seibert* and *Carter* if one had been made. *See Parra*, 420 S.W.3d at 824-25. Further, trial counsel's reasons for not objecting to the admission of the videotaped confession under *Seibert* and *Carter* do not appear in the record; thus, we may not speculate about why counsel acted as he did. *See Jackson*, 877 S.W.2d at 771. We conclude that Griffith has not demonstrated that trial counsel was deficient on this ground.

28

## C.    Warrant and Supporting Affidavit, Hearsay Statements, and Testimony Regarding Credibility of the Confidential Informant

Griffith next argues that trial counsel rendered ineffective assistance by (1) introducing into evidence a copy of the search and arrest warrant and its supporting affidavit, which included hearsay statements made by the confidential informant; (2) eliciting testimony from the detective and the sergeant that "allowed the officers to build up the credibility of the [confidential informant,]" including testimony that the confidential informant had provided information to the sergeant on thirty prior occasions and that such information had proven accurate on each occasion; and (3) failing to object to hearsay statements made by the detective in a video admitted into evidence that depicts officers going through Griffith's residence, including statements by the detective that the residence shown in the video and the vehicle parked in the driveway belonged to Griffith.

Griffith did not file a motion for new trial. The record is therefore silent as to trial counsel's reasons for admitting the warrant and supporting affidavit into evidence and for questioning the detective and the sergeant in the manner that he did. The record is also silent as to trial counsel's reasons for declining to object to the video, which included the detective's comments regarding Griffith's ownership of the residence and vehicle. When the record is silent as to trial counsel's strategy

29

or tactics, we will not speculate about the basis for trial counsel's decision to act as he did. *See Thompson*, 9 S.W.3d at 814. We conclude, therefore, that Griffith has failed to rebut the strong presumption that trial counsel's actions were based on sound trial strategy. *See id.* at 813.

However, even if we were to assume that counsel rendered deficient assistance by introducing the warrant and supporting affidavit into evidence, eliciting testimony from the State's witnesses regarding hearsay statements made by the confidential informant or the credibility of the confidential informant, or failing to object to hearsay comments in the videotape, Griffith has not shown that his defense was prejudiced by trial counsel's actions. *See Strickland*, 466 U.S. at 687; *Garza*, 213 S.W.3d at 347. To show prejudice, an appellant must show "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, 973 S.W.2d at 956.

Griffith argues that trial counsel's errors "reduced whatever slim hopes that [Griffith's] testimony would have [had] in swaying the jury to believe him when he said he hadn't sold drugs to anyone within the three days before the search." However, Griffith's testimony that he did not sell drugs to anyone during the three days before the search was pertinent, if at all, only to his contention at trial that probable cause did not exist to support the search and arrest warrant. As we

explained in our analysis of Griffith's second issue, Griffith's testimony that he did not sell drugs to anyone during the three days before the search (and, thus, that the confidential informant's statements to the contrary were untruthful) was not material to the determination of whether probable cause existed because probable cause for a search warrant is determined from the four corners of the probable cause affidavit. Therefore, even if trial counsel had not engaged in the complained-of conduct, Griffith's testimony would not have negated the existence of probable cause or invalidated the warrant, and it did not create a fact issue for the jury to decide.

Further, other evidence admitted at trial overwhelmingly established Griffith's guilt. As already noted, the State admitted Griffith's August 8, 2012 videotaped confession into evidence during the guilt-innocence phase of trial. During the videotaped confession, Griffith acknowledged that the substance found in his residence during the execution of the search warrant was crack cocaine and admitted that the cocaine belonged to him. Griffith has not shown that his videotaped confession was inadmissible. Further, the jury heard the following additional evidence during the guilt stage of trial: (1) testimony that officers recovered at least twenty grams of crack cocaine at Griffith's residence on August 8, 2012; (2) testimony from the officers that Griffith told them during the August

8, 2012 videotaped interview that the crack cocaine found at his residence belonged to him; and (3) testimony from a forensic scientist that the substance obtained from Griffith's home was cocaine and that its aggregate weight was 20.10 grams. As such, there was ample evidence to support Griffith's conviction for possession of cocaine even if trial counsel had not introduced the complained-of evidence or failed to object to the detective's hearsay statements at trial. Given the evidence presented, Griffith has not shown that there is a reasonable probability that the result of the proceeding would have been different but for counsel's alleged unprofessional errors. *See Lemons v. State*, 426 S.W.3d 267, 274 (Tex. App.—Texarkana 2013, pet. ref'd); *Perez v. State*, 352 S.W.3d 751, 761-62 (Tex. App.—San Antonio 2011, no pet.); *Williams v. State*, 837 S.W.2d 759, 763 (Tex. App.—El Paso 1992, no pet.). We, therefore, overrule Griffith's contention that he received ineffective assistance of counsel on these grounds.

## D. Decision to Call Griffith to Testify

Griffith next argues that trial counsel was deficient in calling him to testify during the guilt-innocence phase of trial. A criminal defendant has a constitutional right to testify on his own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51-52 (1987); *Smith v. State*, 286 S.W.3d 333, 338 n. 9 (Tex. Crim. App. 2009). This right can be knowingly and voluntarily waived only by the defendant, not his counsel. *Smith*,

32

286 S.W.3d at 338 n. 9. "A defendant who rejects his attorney's advice on this matter, preempts his attorney's strategy, and insists that a different strategy be followed, however, may not complain of ineffective assistance of counsel." *Hubbard v. State*, 770 S.W.2d 31, 43 (Tex. App.—Dallas 1989, pet. ref'd); *see also Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim. App. 1986). Here, the record is silent regarding the reasons why Griffith testified at trial. We do not know whether trial counsel advised Griffith to testify or whether Griffith asserted that he should testify on his own behalf. Therefore, Griffith has failed to rebut the strong presumption that his trial counsel rendered adequate assistance at trial on this ground. *See Escobedo v. State*, 6 S.W.3d 1, 10-11 (Tex. App.—San Antonio 1999, pet. ref'd); *see also Rahe v. State*, Nos. 14-11-00707-CR, 14-11-00708-CR, 2013 WL 440557, *3 (Tex. App.—Houston [14th Dist.] Feb. 5, 2013, no pet.) (mem. op., not designated for publication).

E. **Failure to Object to State's Cross-Examination during Hearing on Griffith's Motion to Disclose Identity of the Confidential Informant**

Griffith also argues that trial counsel was deficient by failing to object to certain questions asked by the State during its cross-examination of Griffith at a pretrial hearing on Griffith's motion to disclose the identity of the confidential informant. Specifically, Griffith argues that trial counsel should have objected

when the prosecutor asked Griffith whether he was in possession of cocaine at the time the officers executed the search warrant. Griffith argues that this line of questioning was not proper during the hearing because it was not relevant to the issue of whether the confidential informant's identity should be disclosed and that trial counsel's failure to object caused defendant to judicially confess to the offense of possession of cocaine at the pretrial hearing, thereby limiting Griffith's defenses at trial.

Again, we note that Griffith did not file a motion for new trial. As a result, we do not know trial counsel's reasons for not objecting to the State's questions during the pretrial hearing. We do not know whether trial counsel reviewed Griffith's videotaped confession before the pretrial hearing and assessed its admissibility, and we do not know what information or advice trial counsel may have given to Griffith before that hearing. On this record, all we can discern is that for some undetermined reason, counsel did not object at the pretrial hearing, "and only further inquiry will provide the information necessary to make the proper determination whether he provided the effective assistance envisioned under the Sixth Amendment." *Thompson*, 9 S.W.3d at 814. We conclude, therefore, that Griffith has failed to overcome the strong presumption that counsel was motivated

34

by sound trial strategy in declining to object to the State's questions at the pretrial hearing. *See id.* at 813-14

Further, even assuming trial counsel's representation fell below an objective standard of reasonableness, Griffith has failed to demonstrate that he was prejudiced by trial counsel's failure to object. *See Strickland*, 466 U.S. at 694; *Garza*, 213 S.W.3d at 347. Excluding Griffith's testimony from the pretrial hearing regarding his possession of the cocaine, the evidence at trial—including Griffith's videotaped confession, the testimony from the detective and the sergeant that Griffith admitted during the videotaped interview that the cocaine found in Griffith's residence belonged to him, the forensic scientist's testimony that the substance found in Griffith's home constituted 20.10 grams of cocaine—amply supports Griffith's conviction. We conclude that Griffith has failed to show that he was prejudiced by trial counsel's failure to object to the State's questions at the pretrial hearing. *See Lemons*, 426 S.W.3d at 274; *Perez*, 352 S.W.3d at 761-62; *Williams*, 837 S.W.2d at 763. We, therefore, overrule Griffith's contention that he received ineffective assistance of counsel on this ground. Because the record does not affirmatively demonstrate trial counsel's alleged ineffective assistance, we overrule Griffith's first issue.

35

Having overruled all of Griffith's issues on appeal, we affirm the judgment of the trial court.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 25, 2014
Opinion Delivered August 31, 2015
Do not publish

Before McKeithen, C.J., Kreger, and Horton, JJ.