**Opinion issued April 4, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00619-CR

———————————

**KEITH ALLEN KUPFERER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 338th District Court
Harris County, Texas
Trial Court Case No. 1237989

## O P I N I O N

Appellant Keith Allen Kupferer pleaded guilty to first degree murder. *See*
TEX. PENAL CODE § 19.02(b)(1) (West 2011). Kupferer was sentenced to forty
years' imprisonment. Before pleading guilty, Kupferer filed a motion to suppress
his confession and other evidence obtained by police. After a suppression hearing,

the trial court denied Kupferer's motion. In his sole issue on appeal, Kupferer contends that the trial court abused its discretion in denying his motion to suppress because his custodial statement was taken in violation of his constitutional right to remain silent. We affirm.

## Background

On October 21, 2009, Kupferer shot and killed Patricia Rangel because he believed she had given him an incurable sexually transmitted disease. Kupferer admitted killing Rangel to his mother, father, and sister. Kupferer told his father the general location of Rangel's body and stated that he had attempted to clean Rangel's car with bleach. Kupferer's father informed Patricia Fulenwider, Kupferer's aunt, of the situation, and she called the police the next morning. Police arrested Kupferer at Fulenwider's house, where Kupferer had spent the night. During the arrest, police discovered a gun and ammunition.

Kupferer was taken to the Houston Police Department headquarters where Sergeant Chappell conducted a videotaped interview. At the beginning of the interview, Chappell advised Kupferer of his *Miranda* rights, and Kupferer said he understood each individual right. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966). Then Sergeant Chappell asked Kupferer if he would waive his rights and explain what happened. The exchange was as follows:

> CHAPPELL: Do you agree to waive your rights and talk to me about what happened last night?

2

KUPFERER:  (unintelligible)

CHAPPELL:  Well, let me ask you this, do you want to tell me what happened?

KUPFERER:  To tell you the truth, I really don't want to talk about it, but I mean...

CHAPPELL:  Do you not want to talk about it because it hurts to talk about it?

KUPFERER:  A little bit.  I know I fucked up.

CHAPPELL:  Keith, I know this is real hard, and believe me I understand how, how difficult this is for you.  (pause).  You know everything's going to be okay.

KUPFERER:  No, everything's not going to be okay...

CHAPPELL:  You know there are just varying degrees of trouble.  This is a pretty serious one, but it's not the end of the world.  It really isn't.  Mistakes were made, and now it's time to fix them.  And, I don't know if we can ever fix this one.  All we can do is get some answers for the people who need them.  (pause).  Here.  (pause)

KUPFERER:  Are you going to tell me, uh, exactly what I'm facing, like my time and shit?

Over the next several minutes, Sergeant Chappell explained the various sentences Kupferer could face, and stated that what happened to Kupferer would depend on what he told the officers.  Kupferer then began talking to Sergeant Chappell and eventually confessed to shooting Rangel.  He stated that he had been "messing around" with Rangel and that she had given him an incurable sexually transmitted disease.  Kupferer admitted that he met with Rangel the night of the

3

shooting because he wanted to "get rid of her." Kupferer explained where he got the gun and ammunition and said that, after he shot Rangel, he put the gun to his own head but could not pull the trigger. Kupferer stated that he then drove Rangel's car to his sister's house, where he cleaned the car with bleach.

Kupferer filed a Motion to Suppress, alleging that the Houston Police Department and other law enforcement officials had violated his constitutional and statutory rights under the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure. At the suppression hearing, Sergeant Chappell testified about his interrogation of Kupferer. Sergeant Chappell testified that he read Kupferer his *Miranda* rights and that Kupferer acknowledged that he understood those rights. On direct examination, Sergeant Chappell recounted the interview as follows:

> PROSECUTOR: And after you had gone through those rights, what did you do next?
>
> CHAPPELL: I asked him if he agreed to waive his rights and talk to me.
>
> PROSECUTOR: And did he agree to talk with you?
>
> CHAPPELL: Initially, no. He told me he didn't want to talk to me.
>
> PROSECUTOR: And did he provide any reason as to why not?
>
> CHAPPELL: Yes ma'am. He put his head on the table and began to cry. And I asked him if the reason he didn't want to

me is because it hurt too much. And that's when he began to tell me his story.

PROSECUTOR:       Did he ever ask you to stop asking him questions?

CHAPPELL:       No ma'am.

At the end of the suppression hearing, the State argued that Kupferer's statement to Chappell was freely and voluntarily given after Kupferer waived his *Miranda* rights and that Kupferer "knowingly and voluntarily and intelligently waived those rights." Defense counsel argued that Kupferer's confession was not voluntary and that his arrest was illegal. Defense counsel also maintained that Kupferer invoked his Fifth Amendment right to remain silent during the interrogation, by saying "I really don't want to talk about it." Despite this invocation, defense counsel argued, Sergeant Chappell continued to talk to him for approximately seven minutes.

The trial court denied Kupferer's motion to suppress and entered findings of fact and conclusions of law. The trial court found that Kupferer was not unduly pressured into giving a statement, despite his emotional distress; that his confession was freely, knowingly, and voluntarily given; and that he understood and waived his rights by answering Sergeant Chappell's questions. The trial court also found that Kupferer was visibly upset and emotional—sniffling, crying, and placing his head on the table—during his interview with Sergeant Chappell. The trial court concluded that Kupferer's statement, "To tell you the truth, I really don't

5

want to talk about it, but I mean," was not a clear and unambiguous invocation of his right to remain silent. The trial court concluded that by adding the words "but I mean" to the end of his sentence, Kupferer left the impression that although he did not want to talk about it, perhaps he would. Finally, the trial court found that Sergeant Chappell's follow-up question did not violate Kupferer's right to remain silent because Sergeant Chappell was attempting to clarify Kupferer's ambiguous and incomplete statement.

After his motion to suppress was denied, Kupferer pleaded guilty to first degree felony murder and was sentenced to forty years in prison. Kupferer appealed, challenging the denial of his motion to suppress.

## Discussion

### A. Standard of Review

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Although we give almost total deference to the trial court's determination of historical facts, we conduct a de novo review of the trial court's application of the law to those facts. *Id.* At a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony. *Smith v. State*, 236 S.W.3d 282, 289 (Tex. App.—Houston [1st Dist.] 2007 pet. ref'd). The trial court may choose to believe

6

or disbelieve all or any part of a witness's testimony. *Id.* On appeal, we review the evidence in the light most favorable to the trial court's ruling. *Id.*

## B. Applicable Law

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Consistent with this Fifth Amendment guarantee, law enforcement officials, before questioning a person in custody, must inform him that he has the right to remain silent and that any statement he makes may be used against him in court. *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612. "The right to terminate questioning is among the procedural safeguards that *Miranda* establishes" to protect the Fifth Amendment right to remain silent. *Williams v. State*, 257 S.W.3d 426, 432 (Tex. App.—Austin 2008, pet ref'd). This right requires police officers to immediately terminate questioning when a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (quoting *Miranda*, 384 U.S. at 473–74, 86 S. Ct. at 1627). The suspect is not required to use any particular phraseology to invoke the right to remain silent. *Ramos*, 245 S.W.3d at 418. Any declaration of a desire to terminate the questioning should suffice. *Id.* A law enforcement officer may not continue to

7

question the suspect until the officer succeeds in persuading the suspect to change his mind and talk. *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).

However, an interrogating officer is not required to terminate his questioning unless the suspect's invocation of rights is unambiguous. *Ramos*, 245 S.W.3d at 418 (citing *Dowthitt*, 931 S.W.2d at 257). "If the suspect's statement is not an unambiguous or unequivocal request [to terminate the interview or to invoke the right to silence], the officers have no obligation to stop questioning him." *Davis v. United States*, 512 U.S. 452, 461–62, 114 S. Ct. 2350, 2356 (1994). A police officer is permitted, but not required, to clarify a suspect's wishes when faced with an ambiguous invocation of the right to remain silent. *Marshall v. State*, 210 S.W.3d 618, 628 (Tex. Crim. App. 2006) (citing *Davis*, 512 U.S. at 461–62, 114 S. Ct. at 2356). In determining whether the right to remain silent was unambiguously invoked, courts look at the totality of the circumstances. *Williams*, 257 S.W.3d at 433. Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances. *Id.* at 433–34.

## C.     Analysis

Relying primarily on the Court of Criminal Appeals's decision in *Ramos v. State*, Kupferer maintains that his statement to Sergeant Chappell that he "really [didn't] want to talk about it" was an unambiguous invocation of his right to remain silent. He further contends that his unambiguous invocation of this right

8

was not scrupulously honored when Chappell continued to question him. Therefore, he argues, his confession was inadmissible and the trial court erred in denying his motion to suppress. The State responds that Kupferer's statement was ambiguous and could have been interpreted as an expression of emotional turmoil rather than a desire to remain silent or to terminate the interview. Because his statement was ambiguous, the State argues, Sergeant Chappell was free to ask clarifying questions to determine whether Kupferer wished to continue the interview. Finally, the State contends that Kupferer's own questions and his responses to Sergeant Chappell's questions indicated a willingness to participate in the investigation rather than a desire to terminate the interview. We agree with the State that Kupferer's statement, "To tell you the truth, I really don't want to talk about it, but I mean," was not an unambiguous invocation of his right to remain silent, and, therefore, Sergeant Chappell was permitted to ask Kupferer clarifying questions. *See Marshall*, 210 S.W.3d at 628 (citing *Davis*, 512 U.S. at 461–62, 114 S. Ct. at 2356).

In *Ramos*, the defendant Ramos was questioned by police officers about his involvement in a drive-by shooting. *Ramos*, 245 S.W.3d at 412. Officers told Ramos that his girlfriend had identified him as the shooter, and Ramos told the interrogating officer, "I don't want to talk to you. I don't want to talk about it anymore." *Id.* at 415–16. Police officers then left the room, returning five minutes

9

later to question Ramos again. *Id.* at 413. During this second round of questioning, Ramos confessed. *Id.*

The Court of Criminal Appeals held that Ramos's statement that he did not want to talk to the police officer was "an unambiguous, unequivocal, and unqualified assertion of his right to remain silent" and that "[a] reasonable police officer in [the detective's] position would not have found appellant's assertion of his right to be ambiguous." *Id.* at 418–19. Although the State argued that Ramos's statement was ambiguous because his refusal to talk about "it" could refer to the shooting or the information his girlfriend provided to police, the Court said "[a]ny ambiguity in appellant's other statement to [the detective], that he did not want talk about 'it' anymore, was, in context, entirely irrelevant" in light of his first unambiguous and unequivocal statement. *Id.* at 416–19. In other words, the Court rejected the State's contention that any ambiguity in Ramos's statement, "I don't want to talk about it anymore," rendered his previous statement ambiguous.

We find *Ramos* distinguishable. Ramos's statement—"I don't want to talk to you. I don't want to talk about it anymore"—and Kupferer's statement—"To tell you the truth, I really don't want to talk about it, but I mean"—are not equivalent. The statement, "I really don't want to talk about it," was not in itself a clear and unambiguous statement of refusal to talk to Sergeant Chappell. When the words "but I mean" were added to qualify that statement, Kupferer clearly

10

signaled indecision or ambivalence toward waiving his rights, but he did not unambiguously express a desire to remain silent. *See Mayes v. State*, 8 S.W.3d 354, 359 (Tex. App.—Amarillo 1999, no pet.) (holding that statement made by defendant that "she did not know if she wanted to talk" expressed ambivalence toward waiving her rights and was not an unambiguous assertion of right to remain silent); *see also Baez v. State*, No. 14-07-00426-CR, 2008 WL 4915682, at *4 (Tex. App.—Houston [14th Dist.] Nov. 18, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that defendant's inquiry of, "do I have to say," expressed ambivalence toward waiving his rights, but did not unambiguously or clearly express definite desire to invoke right to remain silent). Furthermore, as the State argues and the trial court found, a reasonable officer could have interpreted Kupferer's statement as an expression of anguish or remorse, especially when viewed in the context of Kupferer's demeanor, rather than a desire to terminate the interview. *See Williams*, 257 S.W.3d at 433–34 (holding that appellant's statement that he wanted to "terminate everything," when considered in context of his previous statements, was ambiguous and was indicative of his frustration at his detention and his attempts to determine whether he had been arrested).

Considering the totality of the circumstances, including Kupferer's demeanor immediately following this statement, Kupferer's statement, "To tell you the truth, I really don't want to talk about it, but I mean," was not a clear and

11

unambiguous invocation of his right to remain silent. *See Luna v. State*, 301 S.W.3d 322, 325–26 (Tex. App.—Waco 2009, no pet.) (holding that appellant's statement, "No puedo" (I can't), was not an unambiguous invocation of right to remain silent but rather an expression of appellant's inability to talk to interviewing officer about source of drugs found at appellant's house); *Hargrove v. State*, 162 S.W.3d 313, 319–20 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that appellant's statements—"Let's just terminate it," followed by "Why should we go on because I'll be spinning my wheels. You're spinning your wheels."—were ambiguous, when taken in context, because it appeared the appellant "was of the opinion that he was wasting his time because he was of the belief that he was 'spinning' his wheels"); *Franks v. State*, 90 S.W.3d 771, 787 (Tex. App.—Fort Worth 2002, pet. ref'd, untimely filed) (appellant's statement that he was tired and did not want to talk anymore was ambiguous and merely indicated he was physically unable to continue); *Dowthitt*, 931 S.W.2d at 257 (holding that appellant's statement, "I can't say more than that. I need to rest," was ambiguous and indicated only that appellant believed he was physically unable to continue).

Because Kupferer's statement was not an unambiguous invocation of his right to remain silent, Sergeant Chappell was not required to terminate his questioning. *See Davis*, 512 U.S. at 461–62, 114 S. Ct. at 2356; *Ramos*, 245 S.W.3d at 418. Sergeant Chappell was permitted to, and did attempt to, clarify

Kupferer's wishes before continuing the interview. *See Marshall*, 210 S.W.3d at 628 (noting that federal constitutional law does not prohibit police from clarifying whether arrestee wishes to waive right to remain silent where, after arrestee's initial response of "no sir" to question of whether he wanted to waive his rights, police officer continued questioning arrestee for purpose of clarifying whether he really wanted to waive his rights). We therefore conclude that the trial court did not abuse its discretion by overruling the motion to suppress and admitting Kupferer's statement.

## Conclusion

We conclude that Kupferer did not unambiguously invoke his right to remain silent and Sergeant Chappell was entitled to clarify Kupferer's ambiguous statement by asking further questions. Therefore, we hold that the trial court did not abuse its discretion by denying Kupferer's motion to suppress. Accordingly, we affirm the judgment of the trial court.


Rebeca Huddle
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish. Tᴇx. R. Aᴘᴘ. P. 47.2(b).