**Affirmed and Memorandum Opinion filed March 21, 2023.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-21-00684-CR

**JOSE MAJANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1741833**

## MEMORANDUM OPINION

Appellant Jose Majano brings this appeal from his conviction for aggravated sexual assault of a child between the ages of six and fourteen. *See* Tex. Penal Code § 22.021(2)(B). Before trial appellant filed a motion to suppress his statement, which the trial court denied. Appellant challenges the trial court's ruling on his motion to suppress. We affirm.

## I. The Offense

E.R., the complainant in this case, testified that she was twelve years old at the time of trial. She was eleven at the time of the offense. E.R. testified that she and her sister, A.R., along with a friend, A.C., walked to McDonald's shortly before 2:00 in the morning. They waited outside until four males, which included appellant, Chris and Bryan Arreaga, and Daniel Tellez, arrived in appellant's car. The three girls got into the back seat of the car with A.R., the older sister, sitting in Daniel's lap, E.R. sitting in appellant's lap, and their friend A.C. sitting in the middle. After leaving McDonald's, the group stopped at a park near an apartment complex. They then drove to the Arreagas' home, stopping at a fast-food restaurant along the way.

When they got to the Arreagas' house E.R. went into Bryan's bedroom with Bryan and appellant. One of the males made E.R. go into the closet. E.R.'s clothes were removed, and the boys made her get on her hands and knees in the closet. Both appellant and Bryan sexually assaulted E.R. in the closet. Chris also came into the closet and tried to force E.R. to perform oral sex but she refused. When she refused Chris kicked her in the head. Daniel came into the closet and forced his penis into E.R.'s mouth. After the males left, E.R. went into a bathroom with A.R. and A.C. and reported that she had been raped.

Before the girls left the house Bryan took their phones and never returned them. As they were driving home appellant, who was driving, pulled over onto the shoulder of the freeway to change the music. While the car was stopped all three girls got out of the car, walked to a gas station, and phoned the police.

---

[1] Because appellant has not challenged the sufficiency of the evidence to support his conviction, we limit the factual background to the facts necessary to understand the underlying offense.

## II.     The Investigation

Detective Twyla Kimberlin testified at trial that the parents of E.R. and A.R. came to the Humble police station to pick them up. Their father had a locator function on his phone and used it to locate the girls' phones. The phones were located in an ecoATM at a local Walmart store. Detective Kimberlin explained that an ecoATM is a machine that permits people to sell used cell phones. The machine requires identification and takes photographs of the seller.

Detective Kimberlin and another officer went to Walmart the next day and learned, with the help of the ecoATM company, that the girls' phones were in the machine. With instructions from the company, Detective Kimberlin opened the machine and retrieved the phones. Information from the ecoATM company reflected that appellant, using his driver's license, had sold the girls' phones using the machine the morning of the offense. Using appellant's address from his driver's license, Detective Kimberlin discovered that appellant drove a black Infiniti four-door sedan. Walmart surveillance footage showed appellant and two males getting out of a black, four-door sedan, and walking into the store at the time the phones were sold.

Detective Kimberlin obtained an arrest warrant, which was executed by Harris County Deputy Sheriff Josh Alfaro. Deputy Alfaro stopped appellant in his car and arrested him pursuant to the warrant. Three females under the age of 17 were in the car at the time appellant was arrested.

Detective Kimberlin also testified to the circumstances surrounding the taking of appellant's statement, which was admitted as State's exhibit 1. Detective Kimberlin testified that appellant admitted sexually assaulting E.R., the younger sister.

3

### III. Appellant's statement

After his arrest appellant was placed in an interview room at the Humble Police Department. Detective Kimberlin read each of appellant's *Miranda* rights to him and asked after each one whether appellant understood his rights. Each time appellant answered affirmatively that he understood his rights. Detective Kimberlin also gave appellant a card and explained that by signing it he was stating that his rights had been read to him and that he understood them.

Appellant told Detective Kimberlin and Texas Ranger Eric Lopez that he and three friends were driving in appellant's car the night of the offense. One of the friends, Daniel, received a message from a girl who wanted to meet at McDonald's. Appellant and his friends stopped at McDonald's and three girls, including the complainant, walked into McDonald's to meet appellant and his companions. When they left McDonald's, appellant's nephew, Bryan Arreaga, drove the car and appellant was riding in the back seat. All three girls were in the back seat, one of whom was sitting on appellant's lap. The group eventually ended up at the Arreagas' house. When they arrived at the house, the three girls, appellant, and appellant's companions went upstairs to the bedrooms.

After answering questions for over an hour appellant asked, "Are we done here?" Appellant continued to talk with Ranger Lopez after asking that question. Appellant then admitted that he was in one of the bedrooms with one of the girls who was in the closet. Ranger Lopez testified that the girl was E.R. Appellant said E.R. took off her own clothes and Bryan had sex with her. Appellant told Ranger Lopez that E.R. also performed oral sex on him. Appellant further admitted having sex with E.R. after Bryan. Appellant claimed he did not know how old E.R. was and he regretted having sex with her. After telling Ranger Lopez that Chris had sex with one of the other girls in a bedroom where appellant's son was sleeping, appellant

asked, "Can I go now?" But, appellant continued talking to Ranger Lopez after asking if he could leave.

Appellant then told Ranger Lopez that the group got back in appellant's car and drove away. Appellant stopped the car to change the music on his phone and the girls got out of the car and walked away. Appellant and his companions went back to the house.

After a jury trial appellant was found guilty of aggravated sexual assault of a child with additional aggravating circumstances as charged in the indictment. The trial court assessed punishment at imprisonment for life.

ANALYSIS

In a single issue on appeal appellant challenges the trial court's denial of the motion to suppress his written statement.

I.      Standard of Review and Applicable Law

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard. *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021). We give almost total deference to the trial court's determination of historical facts and to the trial court's application of law to fact questions that turn upon credibility and demeanor. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). This deferential standard similarly applies when the trial court's determinations are based on a recording admitted into evidence at a suppression hearing. *See Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006); *Matthews v. State*, 513 S.W.3d 45, 62 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

In determining the voluntariness of the confession, the trial court examines the totality of the circumstances. *Delao v. State*, 235 S.W.3d 235, 239 (Tex. Crim. App. 2007). The trial court is the sole judge of the weight and credibility of the

evidence and the trial court's finding on voluntariness may not be disturbed absent an abuse of discretion. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

## II.    Motion to Suppress Hearing

Before trial, a hearing was held on appellant's motion to suppress.[2] Appellant was arrested around 5:00 in the morning and held in the Humble Police Department jail until Detective Kimberlin interviewed him beginning at 12:37 the same afternoon. Appellant was given lunch at noon, shortly before the interview began. Appellant was dressed as he was when he was arrested, which included shorts but no shirt. Appellant did not ask for any additional clothing. The interview was recorded on Detective Kimberlin's body-worn camera.

Detective Kimberlin read each of the statutory warnings to appellant. After each warning she stopped and asked appellant if he understood each warning. Appellant indicated he understood each warning and agreed to waive his rights and speak with Detective Kimberlin. Appellant checked the box on the warning card indicating he understood his rights. Appellant also signed the statutory warning card indicating he understood that by signing the card he was in no way admitting guilt or involvement in any crime.

Detective Kimberlin testified that appellant never requested to terminate the interview, stated that he wished to remain silent, or requested that the interview be terminated so he could obtain counsel. Detective Kimberlin reviewed the video-taped statement in the courtroom and testified that appellant at one point stated, "Are we done here?" Detective Kimberlin testified that appellant's statement was not an

---

[2] Although the attorneys seemed to refer to a written motion at the beginning of the hearing, no written motion to suppress appears in the appellate record.

unequivocal request to terminate the interview. After approximately one hour and twenty minutes, appellant asked, "Can I go now?" Detective Kimberlin testified that appellant's statement was not an unequivocal request to terminate the interview or to remain silent.

Eric Lopez, a Texas Ranger, conducted the interview of appellant with Detective Kimberlin. Ranger Lopez testified that appellant never unequivocally asked for an attorney, refused to answer questions, or asked to terminate the interview. Even after asking if he could leave, appellant continued answering questions during the interview.

After hearing closing arguments, the trial court denied the motion to suppress as follows:

> Based upon my review of the witnesses, the recorded interview, and the case law, I do believe the statement was made under voluntary conditions. It was knowingly, intelligently, and voluntarily made. He also waived his warnings as set out on the video. I do not see any — I believe that the State has met its burden with respect to admissibility.

> With respect to your Motion to Suppress, your Motion to Suppress is denied. I believe that based on the statements that he made were not unequivocal and he never terminated the interview and he continued in question and answer form after he made those statements. I'm also relying on the case law, the Supreme Court case Berghuis verse [sic] Thompkins and also the Luna case, which the State has cited into the record.

## II. The trial court did not abuse its discretion when it denied appellant's motion to suppress.

Appellant argues on appeal that the recorded statement made during his interview with Ranger Lopez and Detective Kimberlin was inadmissible because he unequivocally invoked his right to remain silent. In making this argument appellant asserts three sub-issues on appeal. In his third sub-issue, which we address first,

7

appellant contends the trial court erred in denying appellant's motion to suppress because he invoked his right to remain silent.

In *Miranda v. Arizona*, the Supreme Court formulated a warning that must be given to suspects before they can be subjected to custodial interrogation. 384 U.S. 436, 479 (1966). A suspect in custody must be advised as follows:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id*.

Article 38.22 of the Code of Criminal Procedure governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding in Texas. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007). Section 3 provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things: (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in Section 2(a) before the statement was made and it is included on the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings. Tex. Code Crim. Proc. art. 38.22, § 3. The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception—the warning that an accused "has the right to terminate the interview at any time" as set out in section 2(a)(5) is not required by *Miranda*. *Herrera*, 241 S.W.3d at 526.

It is undisputed that the warnings given in this case were in full compliance with the *Miranda* and article 38.22 requirements. The dispute centers on whether appellant unequivocally invoked his right to terminate the interview.

The right to terminate questioning is among the procedural safeguards that

8

*Miranda* establishes. *Miranda*, 384 U.S. at 474. This right, which safeguards the Fifth Amendment right to remain silent, requires the police to immediately cease custodial interrogation when a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008) (quoting *Miranda*, 384 U.S. at 473–74). There is no talismanic word or phrase with which to invoke the right to remain silent. *Watson v. State*, 762 S.W.2d 591, 597 (Tex. Crim. App. 1988). Any declaration of a desire to terminate the contact or inquiry should suffice. *Ramos*, 245 S.W.3d at 418. However, the officer "need not stop his questioning unless the suspect's invocation of rights is unambiguous, and the officer is not required to clarify ambiguous remarks." *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996).

Appellant contends that by asking, "Are we done here?" and "Can I go now?" he clearly and unequivocally requested to terminate the interview and invoke his right to remain silent. We first address appellant's question, "Are we done here?"

In *Dowthitt*, the Court of Criminal Appeals held that the defendant's statement, "I can't say more than that[;] I need to rest" was not an unambiguous invocation of his right to remain silent. *See id.* at 257. The court reasoned that, instead, the defendant's statement "merely indicates that he believed he was physically unable to continue—not that he desired to quit." *Id.*; *see also Hargrove v. State*, 162 S.W.3d 313, 319–20 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that defendant did not unambiguously request to terminate interview when he said, "Let's just terminate it" and, in response to officer questioning him about whether he wanted to stop, he stated, "Why should we go on because I'll be spinning my wheels. You're spinning your wheels," but defendant did not answer question about whether he wanted to stop, he continued speaking, and he "never again requested to terminate the interview").

9

In contrast, the Court of Criminal Appeals has held that the suspect's statement that he "didn't want to talk to [the interrogating officer]. That he didn't want to talk about it anymore" was "an unambiguous, unequivocal, and unqualified assertion of his right to remain silent." *Ramos*, 245 S.W.3d at 413, 418–19; *see Cooper v. State*, 961 S.W.2d 222, 226 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (holding that defendant unambiguously invoked his right to terminate interview when he stated, "I'm not answering any questions," and defendant "continued to invoke that right throughout the remainder of the video").

We conclude that appellant's statement, "Are we done here?" to Detective Kimberlin and Ranger Lopez was more like those made by the suspects in *Dowthitt* and *Hargrove* rather than the suspects' statements in *Ramos* and *Cooper*, and we agree with the trial court that appellant did not unambiguously invoke his right to remain silent or request to terminate the interview.

Detective Kimberlin read each of appellant's rights to him and asked him after each one whether he understood his rights. Appellant responded after each one that he understood his rights including the right to counsel and to terminate the interview. Appellant signed the warning card indicating he understood his rights. Appellant then spoke with Detective Kimberlin and Ranger Lopez for more than an hour. After over an hour, Ranger Lopez asked appellant to explain exactly what happened in the closet, and appellant responded, "Are we done here?" Appellant continued to answer Ranger Lopez's questions for another 17 minutes in which time he admitted to sexually assaulting E.R. Appellant's question, "Are we done here?" was ambiguous and did not clearly express a desire to stop speaking with the officers. *See Dowthitt*, 931 S.W.2d at 257.

An effective invocation of the right to remain silent in the face of interrogation must be unambiguous. *Berghuis v. Thompkins*, 560 U.S. 370, 381–82 (2010) (citing

10

*Davis v. United States*, 512 U.S. 452 (1994)). "If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'" *Id*. at 382. (quoting *Davis*, 512 U.S. at 461).

Addressing the facts of the case before it, the Court in *Berghuis* noted that the defendant "did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his 'right to cut off questioning.'" *Id*.

Addressing the facts in this case, we conclude that appellant's statement, "Are we done here?" was not an unequivocal invocation of his right to remain silent. *See, e.g.*, *Kupferer v. State*, 408 S.W.3d 485, 489–90 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (appellant's statement, "To tell you the truth, I really don't want to talk about it," was not an unambiguous invocation of his right to remain silent).

As the trial court noted in its findings, "the statements that appellant made were not unequivocal and he never terminated the interview and he continued in question and answer form after he made those statements[.]" Considering the totality of the circumstances, we conclude that when appellant asked, "Are we done here?" he did not unambiguously invoke his right to remain silent or his right to terminate the interview. *See Parlin v. State*, 591 S.W.3d 214, 221 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (comment that "maybe we should terminate" was not an unambiguous assertion of rights to terminate the interview and to remain silent).

Turning to appellant's question, "Can I go now?" we note that approximately one hour and 22 minutes into the interview, appellant asked, "Can I go now?" Appellant then continued to talk with Ranger Lopez for another eight minutes until the interview ended. During that eight minutes Ranger Lopez asked what the complainant was wearing, and appellant said he could not remember. Ranger Lopez

11

also asked how long the girls were in the closet, to which appellant answered he was not sure, but it might have been five minutes. Appellant then explained pulling over on the freeway to change the music when the girls got out of the car and walked away.

At the time appellant asked, "Can I go now?" he had already admitted to sexually assaulting E.R. earlier in the interview. Even if appellant's question, "Can I go now?" could be considered a request to terminate the interview, admission of his statements made following that question was harmless. *See Nonn v. State*, 117 S.W.3d 874, 883 (Tex. Crim. App. 2003) (erroneous admission of statement may not have had significant adverse effect on the jury's verdict because another statement contained much of the same information).

We therefore hold that the trial court did not abuse its discretion when it denied appellant's motion to suppress.

### III.   Appellant did not preserve error regarding his remaining sub-issues.

In appellant's first sub-issue he contends the trial court erred in denying his motion to suppress because appellant's waiver of his rights was the result of official coercion. In appellant's second sub-issue he contends the trial court erred because his statements were involuntary, and the result of promises made by law enforcement.

Appellant failed to preserve error for appeal of these sub-issues because he did not present either of these arguments to the trial court for a ruling. Although appellant did not file a written motion to suppress, his argument at the pretrial hearing was limited to whether appellant unequivocally invoked his right to terminate the interview. *See Leza v. State*, 351 S.W.3d 344, 353 (Tex. Crim. App. 2011) (citing Tex. R. App. P. 33.1); *see also Bleimeyer v. State*, 616 S.W.3d 234, 256 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("Generally, a party must

12

preserve error to complain about the admission of evidence of post-arrest silence."). Because appellant failed to make these arguments to the trial court he has not preserved them for review. *See* Tex. R. App. P. 33.1.

## CONCLUSION

Having determined the trial court did not abuse its discretion in denying appellant's motion to suppress, we overrule appellant's sole issue on appeal and affirm the trial court's judgment.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Zimmerer, Spain, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).