

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00246-CR

Fabian Andres **ARANDA RODRIGUEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 175th Judicial District Court, Bexar County, Texas
Trial Court No. 2022CR8360
Honorable Catherine Torres-Stahl, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: August 13, 2025

AFFIRMED

Appellant Fabian Aranda Rodriguez was indicted on one count of murder. After a four-day jury trial, he was found guilty and the trial court sentenced him to life imprisonment. He appeals his conviction on three grounds: (1) improper admission of a video containing his statements while in custody; (2) improper discharge of a juror for cause; and (3) ineffective assistance of counsel. We affirm.

**BACKGROUND**

Appellant was convicted of stabbing his mother, Maritza Rodriguez, thirty-six times in the face and neck while she was staying with him at an Airbnb. Over the course of four days, the jury heard from seventeen witnesses, including Aranda Rodriguez himself. The jury heard the 911 calls and saw photos and video of the crime scene, including of Ms. Rodriguez's body, a bloodied bed, and blood splatter on the walls and ceiling. They saw photos and video of the kitchen where knives were missing from the storage block and of the backyard trash can where police found a bloodied towel, t-shirt, pants, shoes, and knife. They saw Ring videos as well as videos of the hallway, kept by the Airbnb owner, showing Aranda Rodriguez arrive at the home, his movements throughout his stay, his wearing the clothes and carrying the towel later found in the trash can, and his attempts to get into another room in which another Airbnb guest was staying after his mother was killed. The video evidence also revealed no one else entered the room in which Ms. Rodriguez was killed. The jury also saw photos of Aranda Rodriguez post-arrest with scratches on his forearms and hands. They were shown a forensic serology report and a forensic DNA report and heard testimony concluding the DNA found on the bloodied items matched Ms. Rodriguez and Aranda Rodriguez.[1] Aranda Rodriguez took the stand in his own defense, admitting he stabbed his mother but explaining that he thought he was being attacked. After his mother was killed, Aranda Rodriguez left the Airbnb in an Uber, requiring the Airbnb owner to use his spare key to access the room and find Ms. Rodriguez's body. Aranda Rodriguez was arrested the next day at San Antonio International Airport where he stated he was planning to fly to Miami.

---

[1] The actual testimony, given how DNA testing works, is that neither of them could be excluded along with the extremely remote odds that someone else in the general population would similarly match.

**ADMISSION OF VIDEO EVIDENCE OF STATEMENTS MADE WHILE IN CUSTODY**

First, Aranda Rodriguez argues on appeal the trial court improperly admitted a video taken of him in the homicide investigation room at the San Antonio Police Department because the record does not demonstrate he knowingly, intelligently and voluntarily waived his *Miranda* rights.[2] *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966); TEX. CODE CRIM. PROC. art. 38.22. Specifically, Aranda Rodriguez contends that the nodding of his head when asked if he understood the reading of his rights was not sufficient to demonstrate that he understood or that he knowingly, intelligently, and voluntarily waived those rights when he later decided to speak. The State contends the totality of the circumstances, as set forth in the video, demonstrates his knowing, intelligent, and voluntary waiver. The trial court made findings of fact and conclusions of law supporting its ruling to admit the video.[3] The court found the following after reviewing the video and after hearing the testimony of Sergeant Juarez who read Aranda Rodriguez his rights and interacted with him afterwards:

- Sergeant Juarez was a credible witness and spoke fluent Spanish.
- Defendant's demeanor was calm, quiet and cooperative.

---

[2] At trial, Aranda Rodriguez's counsel first objected to the video, after taking the police officer on voir dire, on the basis that the video does not demonstrate that Aranda Rodriguez understood his rights or made a knowing, intelligent and voluntary waiver of his rights. After the video was admitted and after it had played for a time before the jury, defense counsel objected that the video contained hearsay, specifically the statements of Juan Aranda—Aranda Rodriguez's brother. The trial court overruled that objection saying it was untimely. Defense counsel then objected that there was no translation of what Aranda Rodriguez was saying, but because he had failed to request a transcript and translation prior to trial that objection was overruled as well. On appeal, Aranda Rodriguez abandons those arguments, arguing in his brief only that the nod of his head was insufficient to demonstrate that he understood his rights.

[3] We remanded this case to allow the trial court to make the required findings of fact and conclusions of law pursuant to Texas Code of Criminal Procedure article 38.22, section 6. "In all cases where a question is raised as to the voluntariness of a statement of an accused, the court . . . must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of [the] cause." TEX. CODE. CRIM. PROC. art. 38.22 § 6. As recognized by the Texas Court of Criminal Appeals, such findings are mandatory and required in all cases where voluntariness of a statement is raised as an issue. *Vasquez v. State*, 411 S.W.3d 918, 920 (Tex. Crim. App. 2013) (holding court of appeals committed error by not abating for such findings). "The statute has no exceptions." *Id.*

- Sergeant Juarez's demeanor was friendly and conversational, and was never hostile, confrontational, aggressive, or threatening toward Defendant.

- In response to Sergeant Juarez asking Defendant if he understood his rights, Defendant, although it was subtle, clearly and unambiguously nodded and mumbled what was unmistakably an affirmative response.

- During the remainder of the first portion of the interview Defendant said nothing. When Sergeant Juarez returned and after he spoke with Defendant's brother on the telephone in front of Defendant, Defendant ultimately spoke with Sergeant Juarez.

The court concluded that "Defendant's nonverbal to barely-verbal communication in the form of a nodding of his head up and down and mumbling affirmatively, coupled with his willingness to speak to Sergeant Juarez, constituted a clear and affirmative response that he in fact understood the *Miranda* warnings read to him and that he freely and voluntarily agreed to waive those rights and speak with Sergeant Juarez." Further, the court found no evidence that he was threatened, coerced, intimidated, or offered any incentive to waive his rights and speak. As a result of these findings and conclusions, the trial court admitted the video including those portions in which Defendant spoke, finding the statements were "voluntarily and knowingly made" with the "requisite level of comprehension."[4]

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. AMEND. V; *Miranda*, 384 U.S. at 444. Consistent with this constitutional guarantee, Texas Code of Criminal Procedure article 38.22, section 3(a)(2) states no video statement of defendant made as a result of a custodial interrogation may be used unless, prior to the statement but during the recording, the accused knowingly, intelligently and voluntarily waives the rights identified in article 38.22, section 2(a). TEX. CODE CRIM. PROC. art. 38.22, sec. 3(a)(2). Those rights are: (1) the right to

---

[4] The trial court recognized that the two men spoke in Spanish, that Sergeant Juarez was fluent in Spanish, and that Sergeant Juarez read Aranda Rodriguez his rights in Spanish.

remain silent and not to make any statement at all and that any statement he makes may be used against him at his trial; (2) any statement he makes may be used as evidence against him in court; (3) he has the right to have a lawyer present to advise him prior to and during any questioning; (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and (5) he has the right to terminate the interview at any time. TEX. CODE CRIM. PROC. art. 38.22, sec. 2(a).

We review the trial court's ruling admitting exhibit 61 using a bifurcated standard of review. *See generally Delao v. State*, 235 S.W.3d 235, 241 (Tex. Crim. App. 2007). In doing so, we give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor" and review de novo those mixed questions of law and fact that do not depend upon credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. Ap. 2007); *see also Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). Viewing the record in the light most favorable to the trial court's ruling, we will reverse only when it is "outside the zone of reasonable disagreement." *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *see also Leza*, 351 S.W.3d at 349. Here, the trial court appropriately considered the totality of the circumstances surrounding the interrogation to determine whether there was any coercion and whether the accused demonstrated the requisite level of comprehension. *See, e.g.*, *Joseph v. State*, 309 S.W.3d 20, 25–26 (Tex. Crim. App. 2010).

When challenged in the trial court, the State must prove by a preponderance of the evidence that the waiver was knowing, intelligent, and voluntary. *See Leza*, 351 S.W.3d at 351. It is "[t]rue, 'a valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained.'" *Joseph*, 309

S.W.3d at 24 (quoting *Miranda*, 384 U.S. at 475). However, an express written or oral statement of waiver is not required. *Id.* Indeed, "a waiver need not assume a particular form and, in some cases, a 'waiver can be clearly inferred from the actions and words of the person interrogated.'" *Id.* at 25 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). Thus, Aranda Rodriguez's contention that the officers were required to have him sign a statement is misplaced.

Here, as recognized by the trial court in its findings of fact and conclusions of law, the reading of his rights occurred on videotape and in Spanish, to ensure he understood, as he was raised in Colombia and had spent little time in the United States. Aranda Rodriguez was calm and respectful throughout his time in the investigation room. He listened intently to the officer reading him his rights, nodding at times and nodding more affirmatively when asked if he understood. He then immediately stopped answering any questions, including basic questions such as his name and the date. He gestured, indicating that he did not plan to speak. But after hearing from his brother, *who told him he did not have to talk if he did not want to*, Aranda Rodriguez decided to speak about what had occurred. Aranda Rodriguez does not argue that the reading of his rights by the police officer was insufficient, that he was coerced, intimidated, or deceived in any regard, that he was mistreated, or that the police officers at any time should have stopped the interview.[5] He also does not assert that he failed to understand the rights as they were read. He only contends that the record is insufficient to demonstrate his affirmative understanding.

We disagree. Just as the trial court found, the record reflects that Aranda Rodriguez nodded in agreement when asked if he understood his rights, made several gestures indicating he was following the instructions given, and later decided to discuss the incident after hearing from his

---

[5] "If the suspect's statement is not an unambiguous or unequivocal request [to terminate the interview], the officers have no obligation to stop questioning him." *Kupferer v. State*, 408 S.W.3d 485, 488 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) (quoting *Davis v. United States*, 512 U.S. 452, 461-62 (1994)).

brother. On these facts, we hold the trial court did not abuse its discretion in allowing the video statement to be shown to the jury and overrule Aranda Rodriguez's first point of error. *See Joseph*, 309 S.W.3d at 24-25.

### IMPROPER DISCHARGE OF JUROR FOR CAUSE

Second, Aranda Rodriguez asserts the trial court erred by improperly excusing a juror for cause without allowing his counsel an opportunity to rehabilitate the juror. During voir dire, the following exchange occurred:

> [By the State] Q. Sure. So when were you asked if you had any close family member or yourself, friend, you answered that your cousin was convicted of murder?
> A. Yes.
> Q. And how long ago was that?
> A. It was I believe 2009 or '10, in that area? I know it was like in middle school.
> Q. You were in middle school. And where was that?
> A. It was Corpus Christi. It was a big trial there.
> Q. Okay. And so having had experienced that, would you be able to sit and listen to the facts of this case and just judge it based on these facts and these facts only, or would that experience affect you in such a way that you couldn't be fair?
> A. I feel that it would affect me in a way that I wouldn't be fair because I would be—I feel I'm emotionally tied to it.
> Q. Okay.
> A. Just 'cause I was really close with my cousin. And fact that he was convicted, it just—like a lot of things went into it.
> Q. Yeah.
> A. So, I feel like I wouldn't really be fair towards this individual.
> Q. Sure. Totally understand. Yeah. I appreciate you, thank you.
> THE COURT: Okay.
> DEFENSE: I have a question.
> THE COURT: I don't think you --
> STATE: I don't think you need to.
> THE COURT: I think she was --
> DEFENSE: Oh, okay.
> THE COURT: —very clear. Thank you. You may step outside.
> (Prospective Juror exits courtroom.)
> STATE: Okay. So that puts us at 47, right?
> THE COURT: That was—yeah. So that—
> DEFENSE: So 40 was—
> THE COURT: 40 is struck for cause.
> STATE: Cause.
> DEFENSE: She's off?

THE COURT: Yes. She was pretty clear, Mr. Leal. You don't need to—
DEFENSE: Well, I was going to ask a question, Judge.
THE COURT: Well, I know, but she was pretty clear.
DEFENSE: Well, I have my ways of rehabilitating the witness.
THE COURT: I don't think that was something you could rehabilitate. Okay. That gets us to 47.

We review a trial court's grant of a challenge for cause under an abuse of discretion standard. *Tracy v. State*, 597 S.W.3d 502, 513 (Tex. Crim. App. 2020). In so doing, we will defer to the trial court as it is in the best position to evaluate the prospective juror's demeanor, emotion, and voice. *See, e.g.*, *Segundo v. State*, 270 S.W.3d 79, 93 (Tex. Crim. App. 2008). "If the entire record contains sufficient evidence to support a trial court's determination that a juror would be prevented or substantially impaired from obeying his oath and following his instructions, deference must be paid to that determination." *Allridge v. State*, 850 S.W.2d 471, 477-478 (Tex. Crim. App. 1991); *see, e.g.*, *Tracy*, 597 S.W.3d at 512 (stating same).

Given we were not in the courtroom, where the potential juror's demeanor and emotions were on display, and given the statements of the potential juror could be construed to be unequivocal in nature, we must defer to the trial court's determination that the potential juror could not be fair given her personal experience. *See Tracy*, 597 S.W.3d at 512. Here, the juror indicated they had a bias based on their personal experience. *See Tracy*, 597 S.W.3d at 512. The juror was asked if they could nevertheless follow the law and set aside their personal feelings, and they indicated they could not do so. *See id.* For those reasons, we do not find a clear abuse of discretion, and we must overrule Aranda Rodriguez's second point of error. *See id.*

### INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Aranda Rodriguez asserts ineffective assistance of counsel insofar as his attorney (1) failed to timely request a continuance, (2) failed to timely request a second chair defense counsel, (3) failed to properly communicate plea offers, (4) alienated the jury during voir dire, (5)

failed to timely object to hearsay evidence, and (6) failed to timely secure a translation of Aranda Rodriguez's statements while in custody.

We review ineffective assistance of counsel claims under the well-established standard in *Strickland v. Washington.* 466 U.S. 668 (1984). Such Sixth Amendment claims "involve[ ] a two-pronged test: (1) whether counsel was deficient, and (2) whether the defendant suffered prejudice as a result of counsel's error." *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland*, 466 U.S. at 687). First, Aranda Rodriguez must show, by a preponderance of the evidence, that his counsel's acts or omissions "fell below an objective standard of reasonableness" and cannot be considered "sound trial strategy." *Hart*, 667 S.W.3d at 780–81 (*quoting Strickland*, 466 U.S. at 689). In reviewing trial counsel's decisions, we will consider all relevant circumstances, looking objectively and not through the benefit of hindsight. *See id.* at 782. Moreover, "[c]laims of ineffective assistance must be firmly rooted in the record." *Id.* at 782. Because trial counsel should be afforded an opportunity to explain his decisions, actions and omissions, where that opportunity has not been provided we will "assume a strategic motive if any can be imagined" and will find a deficiency "only if the conduct was so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Okonkwo v. State*, 398 S.W.3d 689, 693 (Tex. Crim. App. 2013)). Second, even where defense counsel's representation is deficient, Aranda Rodriguez must show that he was prejudiced thereby, that the jury would have rendered a different verdict but for that deficiency. *Strickland.* 466 U.S. at 694. "Failure to succeed on either prong is fatal to the ineffectiveness claim." *Ex parte Lane*, 670 S.W.3d 662, 671 (Tex. Crim. App. 2023).

**Failure to Timely Move for Continuance and the Appointment of Second Chair**

First, Aranda Rodriguez complains of his attorney's failure to file a written motion for continuance and failure to obtain a timely ruling from the court on his motion to appoint a second chair defense counsel prior to the day of the special trial setting. On the date of the special trial setting, the trial court granted the motion to appoint a second chair defense counsel but denied the oral motion for continuance, taking the position that Aranda Rodriguez's counsel should have ensured his request for a second chair was presented to the court prior to the day of trial and specifically pointing out that it had not been presented in prior trial settings. The trial court was clear that, had the motion to appoint a second chair defense counsel been urged prior to that date, it would have been granted.[6] As a result Aranda Rodriguez was required to go to trial with an attorney that, by his own admission, had not had time to prepare and a second chair defense counsel who had just been appointed that day.

First, with regard to the failure to file a proper motion for continuance, Texas Code of Criminal Procedure 29.08 makes clear that a motion for continuance must be in writing and verified. *See* TEX. CODE CRIM. PROC. Arts. 29.03, 29.08. Neither requirement was met by counsel in this case. "[I]f a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009); *see, e.g.*, *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) ("[A]n unsworn oral motion preserves nothing for appeal."). Nevertheless, in order for the act of presenting a deficient motion to constitute ineffective assistance of counsel, we would have to hold that, had a sufficient motion been filed, the trial court would have abused its discretion in refusing to grant it. *See, e.g.*, *Richardson v. State*, 606 S.W.3d 375, 384 (Tex.

---

[6] The motion to appoint a second chair counsel was filed in August of 2022 but was not presented to the trial court for a ruling until July of 2024.

App.—Houston [14th Dist.] 2020, pet. ref'd) (quoting *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999)). We "will conclude the trial court's denial of a motion for continuance was an abuse of discretion only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *Nwosoucha v. State*, 325 S.W.3d 816, 825 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (quoting *Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010)).

Here, Aranda Rodriguez's counsel advised the court that he had been in trial the week before and was unable to prepare. The trial court pointed out that this was a special setting after several settings had been continued. Further, counsel did not identify with "considerable specificity" as to how he was unable to prepare for trial, either for the trial court or on appeal. *See Nwosoucha*, 325 S.W.3d at 825. For example, counsel identified no evidence regarding what additional information, evidence, or witnesses the defense would have had available if the trial court had granted the motion. Given the record before us, we hold that the trial court would have been well within its discretion to deny the motion even if it had been properly presented pursuant to Texas Code of Criminal Procedure art. 29.08. *See Strickland*, 466 U.S. at 687; *Richardson*, 606 S.W.3d at 384; *Nwosoucha*, 325 S.W.3d at 825; *see also Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995) (holding bare assertion of inadequate time does not demonstrate prejudice).

Turning to the failure of counsel to timely seek a ruling on the motion to appoint a second chair defense counsel, Aranda Rodriguez points to nothing in the record that establishes the impact, prejudicial or otherwise, of his second chair defense counsel's late appointment. An allegation of ineffectiveness must be firmly rooted in the record. *Hart*, 667 S.W.3d at 782. Without a record demonstrating the impact of the late appointment, i.e., what the second chair counsel did or did

not do as a result, Aranda Rodriguez cannot overcome the strong presumption that counsel rendered adequate assistance. *See, e.g.*, *Hart*, 667 S.W.3d at 782; *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

**Failure to Communicate Plea Offers**

Aranda Rodriguez next alleges that his defense counsel failed to present plea offers to him. The failure to inform a criminal defendant of a plea offer made by the State would fall below the objective standard of reasonableness with regard to a defense counsel's representation. *Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000), *overruled on other grounds* by *Ex parte Argent*, 393 S.W.3d 781 (Tex. Crim. App. 2013); *Ex parte Wilson*, 724 S.W.2d 72, 74–75 (Tex. Crim. App. 1987). In order for the failure of counsel to adequately represent a defendant during plea bargaining to constitute ineffective assistance of counsel, though, Aranda Rodriguez is required to demonstrate he would have accepted an offer that was not communicated, the State would not have withdrawn it, and the trial court would have accepted it. *Argent*, 393 S.W.3d at 784.

Here, the record does not demonstrate that his counsel failed to communicate plea offers. At most, it demonstrates that Aranda Rodriguez misunderstood how the negotiations would take place, believing that with every round of negotiation the State would drop the time of incarceration required rather than increase it as it got closer to trial. Specifically, Aranda Rodriguez complained that he thought, with three offers being made by the State all of which were communicated to him, that the last offer would be less. The court explained to him that the process actually moves in the other direction. He complained again that "they didn't tell me the way it would work." But, even when he understood the process, he refused to take a plea deal offered just prior to trial and instead chose to go to trial. Thus, he cannot demonstrate that an offer was not communicated or that he

would have taken a previous offer. Certainly, it is easy to say—in hindsight—that he would have taken a plea offer that was below the sentence ultimately entered. But, when considering an allegation of ineffective assistance of counsel, we do not look at either his counsel's or his actions using the benefit of hindsight. *See Hart*, 667 S.W.3d at 782. On this record, we cannot hold the record demonstrates ineffective assistance of counsel with relation to the conduct during plea bargaining.

**<u>Alienating Potential Jurors During Voir Dire</u>**

Aranda Rodriguez further contends that his trial counsel so alienated the potential jurors during voir dire that they were biased against him before the trial even began. As support for his assertion, he points to (a) the statement by one potential juror who stated defense counsel was "very unprofessional and unprepared" and (b) the fact that eleven other veniremen raised their hands in agreement with that potential juror's statements. But, immediately after that exchange, another potential juror stated, "I think you're doing your job that you're supposed to." In our review of the voir dire proceedings, we see nothing in trial counsel's conduct that is so egregious as to be beyond the realm of a reasonable defense counsel's actions. Further, we can imagine defense counsel's actions were part of a strategic approach since, when his second chair and the court discussed the fact that some potential jurors might not like him post voir dire, trial counsel's response was, "That's my job." *See Hart*, 667 S.W.3d at 782; *Okonkwo*, 398 S.W.3d at 693. For these reasons, we do not find trial counsel's actions during voir dire to be so deficient as to constitute ineffective assistance of counsel.

**<u>Failure to Secure an Interpreter for the Translation of the Defendant's Custodial Interview and Failure to Timely Object to Hearsay Statements Made During Presentation of Same.</u>**

Aranda Rodriguez next asserts that his counsel was ineffective in allowing a video to be played for the jury which included his statements as well as his brother's. When the video exhibit

was introduced for admission into evidence, Aranda Rodriguez's counsel appropriately took the police officer on voir dire and, after doing so, objected that the State had failed to comply with Texas Code of Criminal Procedure 38.22, failing to establish that Aranda Rodriguez had understood his rights and made a knowing, intelligent and voluntary waiver of same when he began to speak. As set forth above, the trial court overruled that objection, admitted the video exhibit, and allowed it to be played for the jury based on Aranda Rodriguez's affirmative waiver of his rights. After the video had been playing for some time, the State fast forwarded the video to a point where the police officer interviewing Aranda Rodriguez used his cell phone to call Aranda Rodriguez's brother. During the telephone conversation, Aranda Rodriguez did not speak. But, according to the police officer who described for the jury what was occurring in the video, Aranda Rodriguez's brother told him he understood Aranda Rodriguez had been through a lot, he forgave him, and that Aranda Rodriguez did not have to say anything if he did not want to. When defense counsel realized that the State was playing the part of the video that included the brother's statements, he objected based on hearsay. The trial court, however, overruled that objection because it was untimely, specifically pointing to the fact that the video had been admitted in its entirety, with no request for redaction, and had already been playing for the jury. He then objected that, rather than the police officer describing what Aranda Rodriguez is saying, there should be a certified translation of the conversation. But, defense counsel had not asked for a transcript of the video prior to trial and an interpreter advised the trial court that he could not translate directly from a video. Thus, the court allowed the police officer to testify as to what was said during the video.

As to the issue of a transcript and translation, Aranda Rodriguez's counsel has not had an opportunity to explain his actions, and we must assume a strategic motive if any can be imagined. *See Hart*, 667 S.W.3d at 782. Here, given the statements made by Aranda Rodriguez, we can

imagine counsel may have elected not to seek a translation and transcript because he did not want to belabor the statements made by Aranda Rodriguez during the video before the jury. *See id.* Moreover, the trial court properly allowed the police officer to translate the conversation without a transcript or certified translation. *See, e.g.*, *Castrejon v. State*, 428 S.W.3d 179, 188 (Tex. App. – Houston [1st Dist.] 2014, no pet.) (finding no error where trial court allowed police officer to translate portions of the conversation she had with the defendant, despite the lack of a certified translation, where officer was subject to cross-examination about her testimony). And, Aranda Rodriguez makes no showing here that the officer's testimony was inaccurate as to what was said on the video or that he was in any way harmed by an unfair translation. Accordingly, we cannot conclude counsel's conduct was so outrageous that no competent attorney would have engaged in it. *See Hart*, 667 S.W.3d at 782.

With regard to hearsay, it is generally not admissible. *See, e.g.*, TEX. R. EVID. 802–04; *Esparza v. State*, 31 S.W.3d 338, 341 (Tex. App.—San Antonio 2000, no pet.). And, the failure to object to hearsay may constitute deficient performance. *Lane*, 303 S.W.3d at 709. But, even if we find that defense counsel's conduct is deficient in failing to urge a redaction of that portion involving his brother prior to the video being admitted, we cannot find that this prejudiced Aranda Rodriguez.

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). For that reason, even where deficiencies are demonstrated within the record, Aranda Rodriguez must show that there is a "reasonable probability" that *but for* trial counsel's decisions or failures, the jury's verdict would have been different. *Strickland*, 466 U.S. at 694. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id.*; *see Compton v. State*, 666 S.W.3d 685, 715 (Tex. Crim. App. 2023).

In this case, even ignoring the statements made by Aranda Rodriguez and his brother in the video exhibit at issue, other video evidence presented to the jury demonstrated that Aranda Rodriguez was the only person to enter and exit the room in which his mother was killed. Video evidence demonstrated that Aranda Rodriguez was, earlier in the evening, wearing the clothes and carrying the towel that ended up bloodied and thrown away in a trashcan in the backyard. And, most notably, even if the video of Aranda Rodriguez's statements made while in custody were not admitted, the jury was able to hear from him directly when he testified and admitted to stabbing his mother. Such testimony goes much farther than any statement made during the interview. Based on the record before us, we do not hold there is a reasonable probability that but for the defense counsel's actions and/or omissions, the jury would have rendered a different verdict.

For these reasons, we overrule appellant's claim of ineffective assistance of counsel and affirm the judgment below.

## CONCLUSION

We affirm the trial court's judgment.

Lori Massey Brissette, Justice

DO NOT PUBLISH